RIDGEVIEW CONSTRUCTION COMPANY, INC., *et al.*, Plaintiffs-Appellees, v. AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as Trustee, *et al.*, Defendants (Heller Financial Services, Inc., f/n/a Abacus Mortgage Investment Company, Defendant-Appellant; American National Bank and Trust Company of Chicago, as Trustee, Intervening Defendant-Appellant).

First District (3rd Division)    No. 1—89—0592

Opinion filed November 7, 1990.

Rosenthal & Schanfield, of Chicago (Stephen P. Kikoler and David Manteufel, of counsel), for appellant.

Herbert Lesser, Mark Hellner, of Rosenberg, Opdycke, Gildea, Hellner & Kelly, and Michael R. Flaherty and Michael J. Mueller, both of Keck, Mahin & Cate, all of Chicago, for appellees.

JUSTICE WHITE delivered the opinion of the court:

Appellants, Heller Financial Services, Inc., and American National Bank, as trustee under trust No. 104943—01, appeal from an order of the circuit court granting summary judgment in favor of appellees Ridgeview Construction Company, Inc., David E. McDaniel Company, Inc., Jones & Brown Company, Inc., and J.S. Reimer, Inc. Appellants argue that the court erred in finding that mechanics' liens filed by appellees had priority over the interests of appellants.

On December 31, 1980, the Heritage County Bank entered into a real estate sales contract with the American National Bank & Trust Company of Chicago as trustee under trust No. 51444 (Trust). The sole beneficiary of the Trust was Michael Wellek. Under the contract, the Trust agreed to purchase from Heritage property described as lot 12 in the K&K Industrial Park Subdivision in Cook County, Illinois. The contract between the Trust and Heritage acknowledged that the trust intended to construct a warehouse on the property and contained a provision stating:

> "Purchaser agrees that it shall enter into no Construction Contract for construction of the Improvements that does not contain so-called 'no-lien' provisions. Seller shall permit Purchaser to place said contract of record such that no contractor or subcontractor shall have the right to assert any mechanic's lien or materialmen's lien against title to the Premises."

In August 1981, the Trust entered into a general contract with WWI Corporation for the construction of a warehouse on lot 12. WWI was owned by Richard Wanland.

The Trust and WWI executed a document entitled "Abbreviated Form of Agreement Between Owner and Contractor." This document contained a provision stating:

> "The Contractor, WWI Corporation, does hereby fully and completely waive and release, for itself, its successors and assigns, and for all of its subcontractors, and their respective subcon-

tractors, any and all claim of, or right to, a mechanic's lien, under the Statutes of Illinois, against, or with respect to, the above-described premises ***."

The document also provided that work on the warehouse was to be commenced on September 1, 1981, and completed not later than January 1, 1982; that WWI would be paid in one lump sum upon completion of the warehouse; that payment could be withheld if the work was not carried out in accordance with the contract; and that the agreement could be cancelled if the sale from Heritage to the Trust was not completed.

On September 8, 1981, a document entitled "Stipulation, Waiver of Rights to File Mechanics' Lien" was filed with the recorder of deeds office of Cook County. The document stated that a general contract had been entered into between the Trust and WWI and recited the terms of the no-lien provision.

Subsequently, WWI entered into subcontracts with several companies, including appellees. J.S. Reimer's contract was dated October 10, 1981; Jones & Brown's contract was dated October 26, 1981; Ridgeview's contract was dated November 4, 1981; and McDaniel's contract was dated July 30, 1982.

All of the subcontracts contained a reference to the general contract between the trust and WWI and stated that the general contract was available for the subcontractors' review. The subcontracts also stated:

"All parties hereby agree that all of the terms and the general conditions, and other conditions of the Abbreviated Form of Agreement between Owner and Contractor, dated August 31, 1981, between [the Trust] and [WWI] are incorporated in and made a part of this Agreement."

On June 15, 1982, Jones & Brown filed a notice and claim for lien against lot 12. The lien claim alleged that Jones & Brown was owed $215,321 for work performed on the property.

In the early part of October 1982, the warehouse was completed and a certificate of occupancy was issued. However, appellees were not paid for the work they performed. On November 16, 1982, Wellek's attorneys informed WWI that payment for the building would be withheld because WWI was in default under the provision of the general contract requiring completion by January 1, 1982.

On November 29, 1982, J.S. Reimer filed a mechanics' lien claim alleging it was owed $162,980. On December 1, 1982, the trust executed a mortgage on lot 12 to Abacus Mortgage Investment Company. It appears that this mortgage was recorded on December 15, 1982.

On December 2, 1982, Ridgeview filed a lien claim alleging it was owed $197,167. Two weeks later, on December 17, 1982, McDaniel's filed a lien claim alleging it was owed $65,950.

On December 22, 1982, Ridgeview and McDaniel filed a "Complaint in Mechanics' Lien Foreclosure" seeking to recover the amounts they were owed. The named defendants in the action included American National Bank & Trust Company as trustee under trust No. 51444, Michael Wellek, WWI, Jones & Brown, and J.S. Reimer. Jones & Brown and J.S. Reimer answered and filed counterclaims to foreclose their mechanics' liens. Subsequently, the complaint and counterclaims were amended to include Abacus as a defendant. Appellant Heller Financial Services is the successor in interest to Abacus.

On December 13, 1983, the Trust and Wellek filed a motion for summary judgment on the ground that the mechanics' liens were barred by the no-lien clause of the general contract between WWI and the Trust. This motion was granted on January 3, 1984.

Ten days later, Ridgeview and McDaniel filed an amended complaint alleging that the general contract between the Trust and WWI was a sham and that, therefore, they should be treated as prime contractors, not subcontractors. Ridgeview and McDaniel also contended that, because the general contract was spurious, the no-lien provision it contained was of no force and effect. J.S. Reimer and Jones & Brown also amended their foreclosure complaints to allege collusion between the Trust and WWI.

On July 9, 1987, after the Trust defaulted on the 1982 mortgage, Heller Financial Services obtained a judgment of foreclosure. Following foreclosure, lot 12 was sold to appellant American National Bank as trustee under trust No. 104943—01.

In February 1988, Heller filed a motion for summary judgment against appellees on the ground that its mortgage had priority over appellees' mechanics' liens. Heller based its motion on the circuit court's memorandum order of January 3, 1984, in which the court stated that the no-lien clause contained in the general contract and the stipulation filed with the recorder of deeds were valid under section 21 of the Mechanics' Liens Act (Ill. Rev. Stat. 1983, ch. 82, par. 21).

Appellees filed a motion for partial summary judgment seeking a ruling that the no-lien clause and the stipulation were invalid. Appellees' motion alleged that WWI was the agent and alter ego of Wellek and the Trust and that the no-lien clause and the stipulation were part of a scheme to defraud appellees. Appellees further alleged that

because WWI was the alter ego of Wellek and the Trust, the no-lien clause and the stipulation were not executed by an owner and contractor as required by section 21 and, therefore, they were unenforceable and could not be relied upon to give Heller priority over appellees.

On September 28, 1988, the trial court entered an order denying appellants' motion for summary judgment and granting appellees' motion for partial summary judgment. The court found: (1) that the no-lien clause and the stipulation were invalid and unenforceable and without legal effect; and (2) that, because of the intertwined activities and collusion of Michael Wellek and WWI, WWI should be treated as an agent for Wellek and the appellees treated as "prime original contractors." On November 9, 1988, the court entered a second order finding that appellees' mechanics' liens had priority over appellant's mortgage lien.

Appellants filed a motion for reconsideration of both orders. In their motion, appellants referred to the court's January 1984 order and argued that even if the court correctly found that the no-lien clause and the stipulation were fraudulent, the documents should be held valid as to appellants.

On February 17, 1989, the court entered a memorandum opinion denying appellants' motion. In its memorandum, the court stated that its orders of September and November 1988 were based on information that was unavailable at the time it made its January 1984 ruling upholding the validity of the no-lien clause. The court found that appellants were not entitled to priority over appellees because appellants had chosen to ignore the notice afforded by the mechanics' lien claims that had been filed before appellants' mortgage was recorded.

In this appeal from the court's rulings, both parties raise a number of arguments concerning the trial court's finding that appellees should be treated as prime contractors because of the intertwined activities of Wellek and WWI. Wellek and WWI are not parties to this appeal, and for purposes of our decision we are not required to determine the propriety of the trial court's finding that they acted in collusion. The issue we must determine is whether section 21 of the Mechanics' Liens Act will bind a lien claimant to a contract provision waiving liens against the subject property where it is alleged that the contract was procured through fraud and where a third party has advanced funds in reliance on the lien waiver.

Section 21 provides in part:

"If the legal effect of any contract between the owner and contractor is that no lien or claim may be filed or maintained by

any one, such provision shall be binding; but the only admissible evidence thereof as against a sub-contractor or material man, shall be proof of actual notice thereof to him before any labor or material is furnished by him; or proof that a duly written and signed stipulation or agreement to that effect has been filed in the office of the recorder of the county or counties where the house, building or other improvement is situated, prior to the commencement of the work upon such house, building or other improvement, or within 10 days after the execution of the principal contract ***." Ill. Rev. Stat. 1983, ch. 82, par. 21.

■ We have been unable to find any Illinois decision that deals with the precise issue presented in this case. However, in *Decatur Lumber & Manufacturing Co. v. Crail* (1932), 350 Ill. 319, 183 N.E.2d 228, the supreme court held that it would be inequitable to allow a lien claimant to repudiate its execution of a lien waiver which was relied upon by a mortgagee in paying out the proceeds of a loan. In that case, after the lien waiver was executed, the owner's check in payment of the lien claimant's bill was dishonored. In ruling that the mortgage lien had priority over the mechanics' lien, the court stated that it is a fundamental doctrine in equity that where one of two innocent persons must suffer by the fraud of a third person, the loss must fall upon him who by his conduct put it in the power of such third person to cause the injury.

The supreme court's holding in *Decatur* was relied upon in *Richard's Lumber & Supply Co. v. National Bank* (1975), 32 Ill. App. 3d 835, 336 N.E.2d 820. There, Richard's performed work on property owned by one of its employees. The employee later stole lien waivers signed in blank by Richard's president, filled in the waivers, and used them to obtain a mortgage from the National Bank of Joliet. The court found that Richard's made it possible for its employee to commit the fraud by leaving the signed waivers in a place where the employee could obtain them. The court stated that where the bank paid money in reliance on the waivers and where the lienors sought to show the invalidity of the waivers on grounds of fraud not involving the bank, there was a basic presumption of innocence of the bank absent some indication from the facts that the bank knew about, or should have known about, the employee's fraudulent conduct. *Richard's*, 32 Ill. App. 3d at 838; see *Stringert & Bowers, Inc. v. On-Line Systems, Inc.* (1975), 236 Pa. Super. 196, 345 A.2d 194; *Toll v. Beckerman* (1930), 299 Pa. 1, 148 A. 904 (holding that it is only where a contract is made in bad faith for the purpose of misleading and de-

frauding subcontractors and materialmen that a stipulation waiving the right to file a lien will be held invalid and then only as to those who were parties to the fraud or had knowledge of it before they acquired their rights in the property).

Appellants argue that it would be inequitable to allow appellees, who knowingly entered into no-lien contracts, to transform their contracts retroactively to the detriment of appellants. Appellants contend that even if the appellees' contracts were void because of the alleged fraud, appellees' interest should be subordinate to those of innocent third parties such as appellants.

Appellees argue that at the time they entered into their subcontracts with WWI there was nothing to indicate that the general contract was not valid and, therefore, they reasonably relied on their subcontracts with WWI. Although they do not claim that appellants were aware of the alleged fraud and collusion between Wellek and WWI, appellees argue that appellants were not innocent purchasers and, therefore, their mortgage should not be given priority over appellees' liens.

In arguing that the general contract was invalid because of fraud, appellees point to the alleged "side agreement" between Wellek and WWI; the general contract provision that no payment would be made until construction was completed, which appellees claim prevented periodic payments to them during construction; the general contract's "impossibly short" construction period; the execution of subcontracts after the completion date specified in the general contract; the clause in the general contract allowing cancellation if the purchase from Heritage was not completed; the provision in the subcontracts binding the subcontractors to the terms of the general contract; and the failure to require WWI to obtain a performance bond for the benefit of the subcontractors. We find that, with the exception of the alleged side agreement, appellees were on notice of all of these factors.

■ The subcontracts executed by appellees all contained language incorporating the terms of the general contract between Wellek and WWI. Where a subcontract specifically adopts the provisions of a general contract, those provisions become a part of the general contract as if they were expressly written into it. (*Turner Construction Co. v. Midwest Curtainwalls, Inc.* (1989), 187 Ill. App. 3d 417, 543 N.E.2d 249; *Preski v. Warchol Construction Co.* (1982), 111 Ill. App. 3d 641, 444 N.E.2d 1105.) Accordingly, appellees had a duty to learn or know the terms of the general contract before they signed their subcontracts. *Leon v. Max E. Miller & Son, Inc.* (1974), 23 Ill. App. 3d 694, 320 N.E.2d 256.

Had appellees examined the general contract before entering into their subcontracts they would have discovered many of the factors that they now allege demonstrate fraud on the part of Wellek and WWI. Instead, appellees freely entered into the contracts without regard to the fact that they were being bound to terms such as the no-lien agreement or a provision allowing payment to be withheld if the contract terms, including the completion date, were not complied with. Appellees' failure to make themselves aware of this latter provision is demonstrated by their actions in entering into subcontracts shortly before the completion date and, in one case, seven months after the date had passed.

In arguing that they should be relieved from the effects of their own negligence because appellants were not innocent parties, appellees contend that appellants were in a better position to discover the alleged fraud in December 1982 than appellees were one year earlier. Appellees claim that the mechanics' liens filed against the property created a duty on the part of appellees to inquire before making their mortgage. Appellees further contend that if appellants had made an inquiry, they would have learned of the intertwined relationship between Wellek and WWI.

■ It is impossible for this court to determine what appellants would have discovered in December 1982 had they made an inquiry into the basis for appellees' liens. However, we do not find compelling appellees' claim that appellants were in a better position to discover the alleged fraud.

When appellants' mortgage was made, the public record contained a stipulation that no liens arising from the contract between Wellek and WWI would be filed against the property, and two mechanics' liens filed by subcontractors of WWI in an apparent violation of the no-lien stipulation. The lien claims stated only that appellees had not been paid. There was nothing in them that would indicate that the general contract might be fraudulent or the stipulation void. It was not until January 1984 that appellees alleged that the general contract and the stipulation were fraudulent. Thus, no allegations of fraud had been made at the time appellants obtained their interest in lot 12 and appellees themselves were unable to uncover the alleged fraud until more than a year later and then only after extensive discovery.

■ We find that appellees have failed to establish that appellants knew or should have known of the fraudulent activities of Wellek and WWI in 1982. We also find that it was appellees' actions in contracting away their rights to mechanics' liens that led to appellants' ad-

vancement of a mortgage. Therefore, between the parties, the loss should fall on appellees. *Decatur*, 350 Ill. at 325; *Richard's*, 32 Ill. App. 3d at 837.

Here, as in *Richard's*, appellants paid money in reliance on the waivers and appellees attempted to show that the waivers were invalid on grounds of fraud not involving appellants. We find, as the court did there, that because appellees have failed to rebut the presumption of appellants' innocence with evidence that appellants were aware of or should have been aware of the fraud, appellants' mortgage should have priority over appellees' mechanics' liens.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and this cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

RIZZI and FREEMAN, JJ., concur.