J.M. PROCESS SYSTEMS, INC., Plaintiff-Appellant, v. W.L. THOMPSON ELECTRIC COMPANY, INC., Defendant-Appellee.

First District (2nd Division)   No. 1—90—2923

Opinion filed August 13, 1991.

Sosin & Schuster, Ltd., of Alsip, for appellant.

Bedrava, Lyman & Van Epps, of Oak Brook (William D. Lyman, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff, J.M. Process Systems, Inc. (Process), appeals from an order of the circuit court granting defendant W.L. Thompson Electric Company, Inc.'s (Thompson's) motion for summary judgment in a construction contract controversy.

Process asks for review of whether (1) Process, as a subcontractor, was required by its contract with Thompson to provide waivers of liens as conditions prerequisite to payment; (2) section 22 of the Mechanics' Liens Act (Ill. Rev. Stat. 1987, ch. 82, par. 22) (Act) applied to subcontractors and material suppliers; (3) Thompson timely demanded a section 22 statement from Process; and (4) the circuit court erred in granting Thompson's motion for reconsideration. For reasons which follow, we affirm.

The genesis of this dispute was the proposed construction of a ground storage reservoir in the Village of Westmont. In September 1987, the village issued "Specifications of Material and Labor" (specifications) in order to elicit written bids from general contractors. CBI Na-Con was awarded the general contract and served in that capacity during the construction project.

On October 23, 1987, Thompson, an Illinois corporation doing business in Schaumburg, successfully bid for the electrical subcontract contained in the specifications. As part of the subcontract awarded by CBI Na-Con, Thompson was to provide the "Instrumentation/Metering Systems and Supervisory Controls" required by the specifications. On October 19, 1987, pursuant to Thompson's subcontract, Process, an Illinois corporation doing business in Alsip, proposed to furnish an "Aquatrol" system package which complied with the specifications. On February 26, 1988, Thompson, through its president, James D. Martin, sent Process a purchase order to obtain the equipment described in Process' proposal for $38,508.

Process shipped the system on May 2, 1989. Its invoice, mailed on May 5, 1989, was received by Thompson, which made no payment. On September 29, 1989, Process notified the village that it had not yet been paid and threatened to discontinue service and its warranty. In response, Thompson advised Process that at the time it wrote the letter to the village, the control system Process had provided was not working and had not been corrected until October 6, 1989. Since the contract called for a "working system," no payment could have been made prior to October 6, 1989. Thompson also informed Process that a check for 75% of the contract price was ready to be sent upon Thompson's receipt of Process' "partial waivers." The check had been available since mid-July 1989, but had not been picked up and no waivers had been received. Thompson also offered to have 95% of the amount ready within 24 hours' notice if the partial waiver was received. Because of the previous equipment failure, Thompson advised Process that 5% of the amount would be withheld until the system functioned, without failure, for 30 consecutive days; at that time it would be accepted "per the specifications." Process responded that the waivers of liens were not a condition of sale and found the demand "insulting and outdated." Process subsequently brought this action for breach of contract on January 10, 1990.

In lieu of filing an answer, Thompson moved for summary judgment on April 10, 1990, postulating that, under their contract, Process was required to provide Thompson with waivers of liens before Process could be paid. Since no waivers of liens had been received, Thompson asserted it was not obligated to pay. In addition, citing the Act, Thompson claimed that Process failed to submit an affidavit in compliance with section 22 of the Act (Ill. Rev. Stat. 1987, ch. 82, par. 22) and, as a result, that it could not now bring a breach of contract action against Thompson. Attached to the motion was the affidavit of James D. Martin, who swore that the waivers of liens were required

by the contract specifications which Process had proposed to fulfill in its October 19 proposal. A copy of the specifications was also attached to the motion as was the correspondence between these parties.

James McDermott, Process' company president, also filed an affidavit in which he denied that the waivers of liens language applied to the parties' contract. Process' response to Thompson's motion for summary judgment raised arguments regarding whether the waivers of liens condition had been incorporated properly into the parties' contract and whether section 22 of the Act pertained to it. A letter from CBI Na-Con to the village, which certified that all waivers of liens had been received, was also attached to Process' response.

The circuit court granted Thompson's motion for summary judgment without prejudice on June 28, 1990, and gave Process leave to file an amended complaint within 14 days. The circuit court appears to have ruled that the written contract between the parties required compliance with the waivers of liens clause as a condition precedent to payment. On July 12, 1990, Thompson successfully moved for reconsideration, to the effect that the June 28 order was modified to read "with prejudice." The latter order was entered on September 10, 1990. By timely notice of appeal, Process challenges both orders.

I

Initially, Process argues that the contract did not condition payment upon tender of waivers of liens and that the provisions of the contract between the general contractor, CBI Na-Con and Thompson were not incorporated into Process' subsequent subcontract with Thompson.

Process proposed to furnish the materials needed to meet the specifications explicitly set forth in sections 91 and 93 of the document. Thompson's purchase order accepted the proposed equipment expressly "per specifications." Specification sections 91 and 93 both refer to the general conditions of the contract, which begin with the following paragraphs:

> "These Specifications, in general, call the Contractor's attention to the various items required to complete the work. The Plans and Specifications are intended to include everything obviously requisite and necessary to the proper and entire finishing of each branch or trade of the work, whether each necessary item is mentioned herein or not.

> All work herein specified or called for by the accompanying Plans must be executed in accordance with all applicable federal, state and local laws, ordinances, rules and regulations per-

taining, but not limited, to building codes and safety of persons and property. The Contractor and Subcontractors shall pay all applicable sales, consumer, use and other similar taxes required by law for the purchase of equipment, materials and supplies for the work.

The clauses in these General Conditions, unless otherwise mentioned, are to apply to all parts of the work."

Included among the general conditions was the following requirement, now at issue here:

*"WAIVER OF LIENS:*

The Contractor shall procure from each subcontractor and supplier of material or labor a waiver of any claim which they may have under the mechanics lien laws of the state in which the work is located, to insure the Owner immunity from mechanics liens on account of anything which is done by the Contractor or his subcontractors in carrying out the contract and any work orders for additions thereto, all as a condition of any payment by the Owner on account of the contract. Any payments made by the Owner without requiring compliance with this paragraph shall not be construed as a waiver by the Owner of the right to require compliance with this paragraph as a condition of later payments.

The Contractor shall furnish with his request for final payment a complete release of all liens arising out of this contract, or receipts in full in lieu thereof and an affidavit that the releases and receipts include all labor and material for which a lien could be filed."

■■ Process claims that these general conditions nowhere appear in its contract with Thompson. A contract must be read as a whole and all parts construed together. (*White v. White* (1978), 62 Ill. App. 3d 375, 378 N.E.2d 1255.) The specific adoption by the subcontract of the drawings and specifications provisions of the prime contract make those provisions as much a part of the subcontract as if they were expressly written in it; they cannot be ignored. (*City of Lake View v. MacRitchie* (1890), 134 Ill. 203, 25 N.E. 663; *Intaglio Service Corp. v. J.L. Williams & Co.* (1981), 95 Ill. App. 3d 708, 420 N.E.2d 634; *Heifner v. Board of Education of Morris Community High School District No. 101* (1975), 32 Ill. App. 3d 83, 335 N.E.2d 600.) Accordingly, Process had the duty to learn of or know the terms of the general contract before it contracted to furnish the system called for in sections 91 and 93 of the general contract specifications. See *Ridge-*

*view Construction Co. v. American National Bank & Trust Co.* (1990), 205 Ill. App. 3d 1045, 1051, 563 N.E.2d 986.

Both sections 91 and 93 refer to the general conditions and make compliance with them mandatory. Section 93 also specifically states: "The intention of the Specifications and Plans are that each part of the system be completed as related to all other parts of the system with no omissions, even though each and every items [*sic*] may not be specifically mentioned. There shall be no deviations from these Specifications without pre-bid approval by the Engineers as required in the INSTRUCTIONS TO BIDDERS." The opening paragraph of the general conditions makes plain that the clauses contained in it "unless otherwise mentioned, are to apply to all parts of the work." The waivers of liens clause is made applicable to "each *subcontractor* and *supplier of material or labor*" (emphasis added), which applies to Process.

Process' proposal cites sections 91 and 93 of the specifications and explicitly excludes only "conduit, wire, junction boxes, instrument tubing or piping or any other materials utilized by the installing Contractor(s) to install any of the above listed items, and definitely does NOT include any labor whatsoever." Thompson's purchase order, however, sought one "control system per attached quotation guarantee working system per specifications."

Nevertheless, Process insists that the general conditions are inapplicable to it. The evidence reveals that Process understood its obligation to comply with the general conditions. For example, on October 24, 1989, McDermott sent Martin a letter confirming that the maintenance manuals, mandated by the general conditions and equipment requirements, were sent to the engineers in compliance with that particular clause. Under the reading of the contract Process asserts here, no manuals would have been required to be sent if the general conditions did not pertain to Process.

Various clauses in the general conditions are cited by Process which, by their nature, are inapplicable to the specific job Process proposed to undertake on the project, which Process advances as evidence that the conditions do not apply to it. The specifications were written to cover the whole range of trades involved in a construction job of such wide magnitude; not all the conditions will be applicable to each and every trade utilized in the project.

■ The specific language in the waivers of liens clause makes itself applicable to "subcontractors and suppliers of material or labor." Process supplied material pursuant to the specifications, and the language must be read to include Process. Process, having admittedly

failed to provide the waivers according to the terms of the contract, authorized Thompson to withhold payment for the equipment.

## II

Process next alleges that section 22 of the Act (Ill. Rev. Stat. 1987, ch. 82, par. 22) does not apply to a subcontractor's demand upon a subsubcontractor. In its motion for summary judgment, Thompson raised section 22 as an alternative basis for the granting of the motion. In light of our affirmance under Part I of this opinion, the alternative statutory basis need not be addressed.

## III

Process lastly contends that the circuit court erroneously granted Thompson's motion to reconsider its order of June 28, asserting misapprehension of the facts in *Malesa v. Royal Harbour Management Corp.* (1989), 187 Ill. App. 3d 655, 543 N.E.2d 591.

At the hearing on the motion to reconsider, the circuit court indicated that it had granted the motion for summary judgment "without prejudice *** in the hopes of not only resolving it, but that the matter go forward and since nothing has transpired to this point [in the way of settlement], I am granting the motion for reconsideration without prejudice—with prejudice at this time."

■ There was no error in modifying the order to read "with prejudice." The Code of Civil Procedure provides a litigant with the opportunity "within 30 days after the entry of the judgment *** [to] file a motion for a rehearing, or a retrial, or modification of the judgment." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1203.) It is apparent that the circuit court tried to bring the parties together in several efforts to end the litigation. The court, by granting the order without prejudice, also gave Process an avenue to seek redress if, after tendering the waivers of liens, Thompson still refused to honor its contractual obligation. At the motion for rehearing, it became obvious that Process refused to furnish the waiver and that it took issue with the court's interpretation of the contract.

The purpose of the summary judgment procedure is not to try a question of fact, but to determine whether one exists. (*Addison v. Whittenberg* (1988), 124 Ill. 2d 287, 294, 529 N.E.2d 552; *La Salle National Bank v. Illinois Housing Development Authority* (1986), 148 Ill. App. 3d 158, 161, 498 N.E.2d 697; *Montes v. Hawkins* (1984), 126 Ill. App. 3d 419, 423, 466 N.E.2d 1271.) A motion for summary judgment will be granted only where the pleadings, depositions, and admissions on file, together with the affidavits, if any, demonstrate that

there is no genuine issue as to any triable, material fact. Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).

■ The pleadings, exhibits, and affidavits submitted in the case *sub judice* clearly establish that Process was required to furnish waivers of liens as a condition of payment. In light of this fact, the circuit court did not err in granting Thompson's motion for summary judgment. Accordingly, we affirm.

Affirmed.

SCARIANO,* P.J., and DiVITO, J., concur.