RIDGEVIEW CONSTRUCTION COMPANY, INC., *et al.*, Plaintiffs-Appellants, v. AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as Trustee, *et al.*, Defendants-Appellees (American National Bank and Trust Company of Chicago, as Trustee, Intervening Defendant-Appellee).

First District (3rd Division)    No. 1—91—2789

Opinion filed December 29, 1993.

John A. Jeffries and Michael R. Flaherty, both of Keck, Mahin & Cate, Herbert Lesser, and Mark Hellner, all of Chicago, for appellants.

James M. Dash and Stephen P. Kikoler, both of Rosenthal & Schanfield, P.C., of Chicago, for appellees.

PRESIDING JUSTICE TULLY delivered the opinion of the court:

The appellants in this case, Ridgeview Construction Co., David E. McDaniel Company, Inc., Jones & Brown Company, Inc., and J.S. Reimer Inc., seek to have their mechanics' liens on a certain building project declared prioritized over the liens of appellees Heller Financial (Heller), the mortgagee of the property, and American National Bank & Trust (the Trustee), as trustee of the property under trust No. 104943—01.

In December 1980, the trustee purchased the parcel of land at issue under the proviso that a warehouse would be built on said property and it provided further that there would be no liens on the property and "no contractor or subcontractor shall have the right to assert any mechanic's liens or materialman's liens against title to the Premises." The sole beneficiary to the trust, Michael Wellek (Wellek), then entered into a general contract with WWI Corporation (WWI) for the construction of a warehouse.

Subsequently, WWI entered into various subcontracts with appellants. The agreement incorporated "all the terms and general conditions" of the contract between Wellek and WWI. This meant that the subcontractors would not be allowed to hold any liens against the property for their work and materials.

This is the second time this case comes before this court on appeal. In the earlier case of *Ridgeview Construction Co. v. American National Bank & Trust Co.* (1990), 205 Ill. App. 3d 1045, 563 N.E.2d 986, this court held that the lien claimants at issue were entitled to bring forth evidence whether Heller, the mortgagee bank, knew or should have known of the fraudulent collusion between the owner and general contractor. The trial court had noted that Heller made a mortgaged loan in the face of half a million dollars of recorded mechanics' liens.

This case was then remanded for "proceedings consistent with this opinion." However, on remand, the trial court held that summary judgment be entered in favor of Heller. The trial court's order granting summary judgment stated:

> "Defendants' said motion for summary judgment in their favor be, and hereby is, granted as required by the decision of the Appellate Court."

According to plaintiffs, this order made clear that they would not be allowed to conduct discovery or proffer evidence on fraud.

In the original case before this court, the owner and general contractor signed a no-lien contract which provided that "no contractor or subcontractor shall have the right to assert any mechanic's lien or materialman's lien against title to the property." Subsequently, the general contractor entered into contracts with the

many subcontractor-plaintiffs which incorporated all the terms and provisions of the general contract. After the general contractor, WWI, failed to pay amounts due and owing the subcontractors, they filed a "Complaint in Mechanic's Lien Foreclosure." Defendant trust motioned for summary judgment on the basis the liens were barred by the no-lien clause of the general contract. This motion was granted.

Subsequently, Heller filed a motion against plaintiffs-subcontractors on the grounds that its mortgage took precedence over any subcontractor claims based on the no-lien contract. The subcontractors then filed a motion for partial summary judgment seeking an invalidation of this no-lien clause. The trial court agreed with the subcontractors, finding the no-lien clause to be invalid on its face and, in addition, that it amounted to fraud between the general contractor and owner. The court then entered a second order finding that the subcontractors' mechanics' liens took priority over the bank's mortgage lien.

The mortgagee argued that it would be inequitable to allow the subcontractors to claim they did not know what they were signing in their contract with WWI, the general contractor. Although the subcontractors did not claim that the mortgagee was aware of the alleged fraud and collusion between the owner, Wellek, and the general contractor, WWI, they argue that Heller was not an innocent purchaser and, therefore, their mortgage should not be given priority over the subcontractors' liens.

The appellate court then reversed the trial court and held that the subcontractors failed to establish that the mortgage holders knew or should have known about the fraudulent actions of the owner and general contractor in 1982:

> "It is impossible for this court to determine what appellants [mortgagees] would have discovered in December 1982 had they made an inquiry into the bases for appellees' [subcontractors'] liens. However, we do not find compelling appellees' [subcontractors'] claim that appellants were in a better position to discover the alleged fraud." (Emphasis added.) *Ridgeview,* 205 Ill. App. 3d at 1052, 563 N.E.2d at 991.

After remand of this case, the circuit court vacated the prior summary judgment in favor of plaintiffs and entered summary judgment in favor of defendants. The basic premise of this holding is that: (1) plaintiffs were subject to and aware of the no-lien provision in the contract they signed; and (2) defendants were never aware of the fraud or collusion between the owner and general contractor.

## ISSUES

The following issues are presented for review: (1) whether the

trial court on remand properly followed the mandate of the appellate court by entering summary judgment in favor of appellees; and (2) whether, on remand, the plaintiffs should have been allowed to seek discovery and bring forth evidence in opposition to Heller's motion for summary judgment.

## OPINION

The consideration of this court's prior mandate and the discovery issue are very much intertwined. The court stated:

> "We find, as the court did [in *Richard's Lumber & Supply Co. v. National Bank*], that because appellees [subcontractors] have failed to rebut the presumption of appellants' innocence [Heller and American] *** that appellants were aware or should have been aware of the fraud, appellants' mortgage should have priority over appellees' mechanics' liens." *Ridgeview*, 205 Ill. App. 3d at 1053, 563 N.E.2d at 991.

This quotation quite clearly supports the actions of the trial court upon remand in vacating the prior summary judgment and entering summary judgment in appellants' favor. Had the appellate court worded its mandate a little clearer, there would have been no basis for the instant appeal. It is fairly clear that the appellate court did not remand this case for further discovery. This would have violated the doctrines of estoppel and *res judicata*, since the discovery issue was fully and fairly litigated by the trial court and affirmed on appeal:

> "We find that appellees have failed to establish that appellants knew or should have known of the fraudulent activities of Wellek (owner) and WWI (general contractor)."

■ This court specifically referred to the case of *Richard's Lumber & Supply Co. v. National Bank* (1975), 32 Ill. App. 3d 835, 336 N.E.2d 820, wherein the court held that where the bank paid money in reliance on lien waivers and where the lienors sought to show the invalidity of the waivers on the grounds of fraud not involving the bank, there was a basic presumption of innocence by the bank absent some indication from the facts that the bank knew about, or should have known about, the employee's fraudulent conduct. Likewise, in this case, appellants never overcame the presumption of Heller's and American's innocence as against the subcontractors. There exists a fundamental doctrine in equity that where one of two innocent persons suffers by the fraud of a third person, loss must fall upon him who by his conduct put it in the power of such third person to cause the injury. See *Decatur Lumber & Manufacturing Co. v. Crail* (1932), 350 Ill. 319, 183 N.E. 228.

■ This case is also a case of several innocent parties, one of

whom must bear the loss. What is significant to the ruling herein is that the appellants-subcontractors could have prevented their loss had they thoroughly read the contract between the owner and general contractor, wherein the no-lien provision was clearly set forth.

Based upon the foregoing facts, it is quite apparent the trial court acted properly. The trial court did not grant, nor can this court grant, discovery privileges in a case where there is no new evidence, not otherwise discoverable previously. This case demonstrates that subcontractors are held accountable for knowing, absent fraud or deception, the realities and implications of any agreements they sign with a general contractor and must learn to protect themselves from "no-lien" contractual provisions.[1]

For the foregoing reasons, this case is affirmed in all respects.

Affirmed.

RIZZI and GREIMAN, JJ., concur.

---

[1]It appears as though subcontractors have already tried to protect themselves. The 87th General Assembly has enacted Public Act 361, which amends a number of sections of the Mechanics Lien Act and has added a new provision as "Ill. Rev. Stat. (1991), ch. 82, par. 1.1," which provides:

"1.1 An agreement to waive any right to enforce or claim any lien under this Act where the agreement is in anticipation of and in consideration for the awarding of a contract or subcontract *** is against public policy and unenforceable."

The subcontractors have apparently lobbied their way out of this interesting predicament. But have they? Section 21 of the Act still allows the waiver of mechanic lien rights as long as "the waiver is not prohibited by this Act." This language was added at the same time section 1.1 was enacted. Its meaning and interaction with section 1.1 can be expected to be the subject of another appellate case in the not-too-distant future.