BROWN AND KERR, INC., Plaintiff and Counterdefendant-Appellee, v. AMERICAN STORES PROPERTIES, INC., *et al.*, Defendants and Counterplaintiffs-Appellants.

First District (5th Division) No. 1—98—3749

Opinion filed August 6, 1999.

Michael J. Wall and John D. Silk, both of Rothschild, Barry & Myers, of Chicago, for appellants.

Daniel S. Mathless, of Chicago, for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Defendants and counterplaintiffs American Stores Properties, Inc. (American), and Trapani Construction Co. (Trapani) appeal from an order granting partial summary judgment to plaintiff and counterdefendant Brown & Kerr, Incorporated (B&K), on B&K's claim for breach of contract. American and Trapani also appeal from the denial of their request for attorney fees as well as the denial of their motions to reconsider these rulings.

For the following reasons, we affirm.

On August 8, 1995, B&K filed a complaint against American and Trapani, alleging that in 1993 American contracted with Trapani for construction work at a store owned by American. Trapani then subcontracted with B&K for work on the project. B&K alleged that it completed performance on the subcontract in May 1994 and performed

extra work in the amount of $12,889.77. B&K alleged that the additional items, "while possibly appearing on [the] overall plans," were not on the plans that Trapani provided to B&K to compute the base subcontract price. B&K alleged that a balance remained due on the subcontract of $19,864.83 and on the extra work in the amount of $12,889.77.

In addition to its allegation that it had performed all of the contractual and statutory obligations, B&K alleged that it recorded a mechanics lien with the county recorder in May 1995 and neither defendant had paid any part of the balance due. In count I, B&K requested judgment pursuant to section 28 of the Mechanics Lien Act (770 ILCS 60/28 (West 1996)) against American and Trapani and an award of interest, attorney fees, and expenses. In count II, B&K alleged a claim for breach of the subcontract against Trapani and requested a judgment, plus interest, attorney fees, expenses, and costs.

In their answer, American and Trapani denied that B&K had completed performance of all contract obligations and denied any performance of extra work. American and Trapani asked for judgment in their favor on count I and for Trapani's attorney fees. Trapani also requested judgment in its favor as to count II as well as costs and attorney fees.

In their counterclaim, American and Trapani alleged that because B&K refused to provide guarantees, sworn statements, and a final lien waiver and release as required by the contract, B&K was not entitled to any further payment. American and Trapani requested judgment in their favor and attorney fees.

B&K answered the counterclaim, admitting that it failed to provide the guarantees, but contending that this failure was only "in legitimate response" to Trapani's repudiation of its duty to unconditionally tender $16,671.60. B&K alleged that Trapani repudiated the contract by unequivocally stating that it would tender the uncontested portion only if B&K provided a final lien waiver and complete release of B&K's mechanics lien. B&K alleged that, after the lawsuit was filed, Trapani requested the sworn contractor statement and a final lien waiver. B&K responded to Trapani's demands by tendering a partial waiver for the undisputed portion, a subcontractor's affidavit, a final waiver from B&K's supplier, a manufacturer's warranty, and its guarantee. However, Trapani did not accept the tender and continued to insist upon the waiver of all B&K's lien rights.

On September 27, 1996, the circuit court granted B&K's motion for partial summary judgment as to count II, stating:

> "[T]here is no material issue of fact that plaintiff is owed the sum of $16,671.60 for work performed under the base subcontract. The

basis for this finding arises not from contested legal or factual issues or from rights and duties grounded in contract, but from the correspondence between the parties and counsel. Obviously, there are significant areas of dispute, but there is no material factual dispute as to Trapani's liability to [B&K] for $16,671.60."

The circuit court denied B&K's motion for partial summary judgment as to count I of the complaint, the claim as to the mechanics lien, and granted American and Trapani's motion for judgment on the pleadings as to that count. The court stated:

"Inasmuch as the lien is declared invalid, no waiver from [B&K] is necessary. Inasmuch as there are issues of material fact concerning backcharges and conduct that remain, the remainder of count II and the counterclaim are transferred to *** the First Municipal District, all mechanic lien issues having been adjudicated."

The circuit court also noted that because both sides won and lost, it would not consider the requests for attorney fees.

The circuit court denied the parties' motions for reconsideration on September 11, 1997. On January 21, 1998, the circuit court entered judgment for Trapani on the back charges issue in the amount of $1,022 and on July 8, 1998, the court denied the parties' motions for attorney fees. On July 27, 1998, American and Trapani moved for reconsideration of that order, and on September 3, 1998, the court denied the motion.

On October 5, 1998, American and Trapani filed their notice of appeal. They contend that the circuit court erred in granting partial summary judgment to B&K on the breach of contract claim and in denying their requests for attorney fees.

B&K contends that this court does not have jurisdiction to review this case because American and Trapani filed two posttrial motions after final judgment was entered on January 21, 1998, and thus when Trapani and American filed their notice of appeal after disposal of the second motion, it was untimely. See *Sears v. Sears*, 85 Ill. 2d 253, 259 (1981) (second postjudgment motion filed more than 30 days after judgment is not authorized).

■ A notice of appeal must be filed "within 30 days after the entry of the final judgment appealed from, or, if a timely post-trial motion directed against the judgment is filed, *** within 30 days after the entry of the order disposing of the last pending post-judgment motion." 155 Ill. 2d R. 303(a)(1), quoted in *P&A Floor Co. v. Burch*, 289 Ill. App. 3d 81, 87 (1997). "A final judgment is defined as 'one which fixes absolutely and finally the rights of the parties in the lawsuit; it is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judg-

ment.' " *Burch*, 289 Ill. App. 3d at 87, quoting *Nelson v. United Airlines, Inc.*, 243 Ill. App. 3d 795, 799 (1993). " 'If an order does not resolve every right, liability or matter raised, it must contain an express finding that there is no just reason for delaying an appeal. Otherwise, the order is not appealable.' " *F.H. Prince & Co. v. Towers Financial Corp.*, 266 Ill. App. 3d 977, 983 (1994), quoting *Marsh v. Evangelical Covenant Church*, 138 Ill. 2d 458, 465 (1990).

█ A request for attorney fees is a claim within the meaning of Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). *Prince*, 266 Ill. App. 3d at 983. This is so whether the fees are sought pursuant to statute, such as the entry of sanctions for false pleadings, or pursuant to a contract provision. *Prince*, 266 Ill. App. 3d at 983. Although it may be filed after entry of judgment, a claim for attorney fees is not a post-trial motion within the ambit of sections 2—1202 and 2—1203 of the Code of Civil Procedure (735 ILCS 5/2—1202, 2—1203 (West 1996)), nor, even if viewed as a motion to modify the judgment, is it a post-trial motion "directed against the judgment" within the meaning of Supreme Court Rule 303(a). *Prince*, 266 Ill. App. 3d at 983. However, as B&K points out, a motion seeking to vacate a judgment denying a motion for fees that was presented as a counterclaim or as an additional claim for relief can be categorized as a section 2—1203 post-trial motion because, under such facts, the motion to vacate or reconsider is directed against the judgment. *Prince*, 266 Ill. App. 3d at 983 n.3, citing *Marsh*, 138 Ill. 2d 458; *Benet Realty Corp. v. Lisle Savings & Loan Ass'n*, 175 Ill. App. 3d 227 (1988); *Hernandez v. Fahner*, 135 Ill. App. 3d 372 (1985).

B&K asserts that the motions filed after the January 1998 order requesting attorney fees were posttrial motions directed against the final judgment of the case so as to constitute the parties' one chance at reconsideration and thus the notice of appeal must have been filed after the denial of the first motion. The record does not support this contention.

█ The complaint and the countercomplaint asserted claims for attorney fees based on the contract language. The circuit court initially denied the claims for fees when it ruled on the motion for partial summary judgment, because each side had won and lost. In that order, the court denied judgment as to the issues concerning back charges and other conduct remaining in count II of the complaint and the counterclaim. In January 1998, the court entered judgment in favor of Trapani as to the back charges issue. There is no language in that order indicating that it is final and appealable, nor is there any mention of attorney fees. Both parties subsequently moved for fees. The circuit court denied the motions, considering the additional facts of the Janu-

ary 21, 1998, order. The July 8, 1998, order stated it was "a final and appealable order."

We conclude that the January 21, 1998, order was not a final order for the purposes of determining appellate jurisdiction. That order did not dispose of the claims of the case because the claims remaining after the summary judgment included requests for attorney fees based on the contract language and the order did not address the fees issue. Further, the order did not include final language as provided in Rule 304. The subsequent order issued by the circuit court indicated the court's consideration of the attorney fees issue in light of the final resolution of the contract claims. The court did not rule on the matter as a motion to reconsider until the second motion.

This case is distinguishable from the authority cited by B&K. In *Benet*, 175 Ill. App. 3d 227, the court determined that where a defendant filed two posttrial motions seeking reconsideration of the denial of its request for attorney fees, the time for filing a notice of appeal expired 30 days after resolution of the first motion. However, the order from which the defendant in *Benet* filed its posttrial motions expressly denied and resolved the defendant's request for attorney fees. Here, the circuit court had not ruled on the question of attorney fees with regard to the remaining claims when it issued its order on January 21, 1998. Thus, the case was not fully resolved until the denial of the motion for reconsideration in September 1998.

■ ■ B&K also argues that the motion for reconsideration filed in July 1998 was not signed by an attorney, and because it was therefore a nullity, the notice of appeal filed thereafter was too late to vest this court with jurisdiction. On July 27, 1998, American and Trapani moved for reconsideration of the July 8, 1998, order. The signature line of the document includes the name of the attorney followed by two initials. B&K argued to the circuit court that because the motion was not signed by an attorney as required by Supreme Court Rule 137 (155 Ill. 2d R. 137), it was a nullity. On September 3, 1998, the circuit court granted defendants leave to have their attorney sign the motion. B&K contends that the allowance of the signature did not cure the error and therefore the motion was invalid and could not have extended the time for filing the notice of appeal.

Supreme Court Rule 137 requires:

> "Every pleading, motion and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name ***. *** If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction ***." 155 Ill. 2d R. 137.

In *Bachmann v. Kent*, 293 Ill. App. 3d 1078, 1083 (1997), *appeal withdrawn*, 177 Ill. 2d 567 (1998), this court ruled in part that the circuit court properly struck a defendant's rejection of an arbitration award because the notice of rejection was signed in violation of Supreme Court Rule 137. The defendant also complained the circuit court erred in denying counsel's request to sign the notice after the improper signature was called to her attention. *Bachmann*, 293 Ill. App. 3d at 1086. The *Bachmann* court indicated that where a document is signed in violation of Rule 137, the court may impose an appropriate sanction and is under no obligation to allow an attorney to sign the document. *Bachmann*, 293 Ill. App. 3d at 1086-87.

While *Bachmann* clarifies the authority of the circuit court in imposing sanctions under this rule, that ruling does not require a court to impose certain sanctions. The circuit court here allowed defendants' counsel to sign the motion and then the court denied the motion. Under these facts, this court is not deprived of jurisdiction where defendants thereafter filed a notice of appeal.

■ This court reviews a decision on a motion for summary judgment and a decision on a motion for judgment on the pleadings *de novo*. See *Boub v. Township of Wayne*, 183 Ill. 2d 520, 524 (1998); *Barille v. Sears Roebuck & Co.*, 289 Ill. App. 3d 171, 174 (1997).

American and Trapani argue that the circuit court erred when it granted partial summary judgment to B&K on the claim for breach of contract. Specifically, they contend that the circuit court erred when it determined that B&K was entitled to payment of $16,671.60 for breach of contract and when it concluded that B&K did not need to provide guarantees, a sworn statement, and lien waivers. Defendants contend that until they received the guarantees and waivers, B&K was not entitled to payment.

■ To state a cause of action for breach of contract, a plaintiff must establish: (1) an offer and acceptance; (2) consideration; (3) definite and certain terms of the contract; (4) the plaintiff's performance of all required contractual conditions; (5) the defendants' breach of the contract terms; and (6) damage resulting from the breach. *Barille*, 289 Ill. App. 3d at 175. Defendants appear to contend that B&K could not prevail on such a claim because it did not provide facts to show performance of its contractual obligations.

The contract between B&K and Trapani required B&K to provide Trapani

> "with the name, address and phone number of every material supplier from which material in excess of $500.00 is purchased for this project by Subcontractor, whether or not payment for such materials has been made by Subcontractor. Subcontractor's affidavits

submitted for payments hereunder shall be executed only by the majority or principal owner or shareholder of Subcontractor and by the execution *** of such affidavits such owner or shareholder personally guarantees the truth of such affidavits and agrees to *** indemnify and hold harmless Contractor and Owner for any damage, losses, attorney's fees, expenses or costs whatsoever, incurred by Contractor and/or Owner as a result of any errors, omissions or false statements in any such affidavits."

The subcontract also required B&K to provide a manufacturer's guarantee and its own guarantee.

The subcontract further stated:

"12.1 Final payment, constituting the entire unpaid balance of the Subcontract Sum, shall be made by the Contractor to the Subcontractor when the Subcontractor's Work is fully performed in accordance with the requirements of the Contract Documents, the Architect has issued a Certificate for Payment covering the Subcontractor's completed Work and the Contractor has received payment from the Owner."

Thus, the contract required that B&K fully perform before being entitled to final payment. Full performance on the contract would include providing the guarantees and sworn statements.

The subcontract also stated that it consisted of the subcontract and the prime contract, which is the agreement between the owner and contractor. The prime contract contained the following relevant provisions[1]:

"9.10.2 Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amounts withheld by Owner) have been paid or otherwise satisfied, *** and (5), if required by the Owner, *** releases and waivers of liens, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner."

Defendants contend this language demands that final payment would not be due until B&K submitted final lien waivers. See *J.M. Process Systems, Inc. v. W.L. Thompson Electric Co.*, 218 Ill. App. 3d 350, 355-56 (1991) (because a supplier failed to provide a lien waiver according to the terms of the contract, this constituted the supplier's authorization to the subcontractor to withhold payment for the equip-

---

[1]Despite the circuit court's statement that this contract was not in the record, the contract was attached to defendants' answer and counterclaim.

ment; thus, the requirement of providing a lien waiver was a prerequisite to payment).

B&K admits that it initially did not provide the sworn statements, guarantees, or lien waivers. B&K contends, however, that even if these items were conditions precedent to payment, it could not be required to submit final lien waivers because this would have required it to forfeit its rights to the claim for the additional amounts. We note that the existence of lien waivers only bars the right to assert a lien under the Mechanics Lien Act, but does not operate to extinguish the underlying obligation. *Lyons Federal Trust & Savings Bank v. Moline National Bank*, 193 Ill. App. 3d 108, 113 (1990). However, since most lenders require a "holdback" or escrow of funds to satisfy a lien, the continued maintenance of the lien is a strong encouragement for the owner to resolve the controversy.

In its motion for summary judgment, B&K attached letters exchanged between the parties indicating that, after the lawsuit was filed, B&K offered to tender the guarantees, sworn statements, and partial lien waivers in an effort to obtain payment for the undisputed amounts due. B&K asserts that this was a sufficient tender and demonstrated that it had complied with all of the contractual requirements. This offer was rejected by Trapani and American, which required final waivers before payment of undisputed sums due. B&K thus asserts that defendants' refusal to pay at least the undisputed amount due on the base contract unless B&K provided the final lien waiver was a breach of the duty to pay under the contract. B&K contends that defendants' offer of payment on the condition that B&K provide a final lien waiver was an ineffective tender and therefore B&K was entitled to summary judgment on the amount due on the base contract.

■ "Tender" is an unconditional offer of payment consisting of the actual production of a sum not less than the amount due on a particular obligation. *MXL Industries, Inc. v. Mulder*, 252 Ill. App. 3d 18, 29 (1993). A tender must be without conditions to which the creditor can have a valid objection or which will be prejudicial to his rights. *MXL*, 252 Ill. App. 3d at 29-30. Tender of an amount less than the creditor claims is due is ineffective when acceptance is conditioned on an admission that no greater amount is due. "Thus, where a debtor conditions its tender with a demand for a full release, absent an express stipulation in the contract or statutory requirement obliging the creditor to give a prior release, the tender is ineffective." *MXL*, 252 Ill. App. 3d at 30.

American and Trapani contend that they could require a final lien waiver because the contract contained an express requirement as

noted in *MXL* requiring the lien waiver as a condition for final payment. B&K contends, however, that even if the contract had such a requirement, it would be unenforceable.

Section 1.1 of the Mechanics Lien Act provides:

"An agreement to waive any right to enforce or claim any lien under this Act where the agreement is in anticipation of and in consideration for the awarding of a contract or subcontract, either express or implied, to perform work or supply materials for an improvement upon real property is against public policy and unenforceable." 770 ILCS 60/1.1 (West 1996).

In *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153 (1998), the supreme court reversed a lower court's ruling which determined that section 1.1 of the Mechanics Lien Act was unconstitutionally vague and therefore the liens filed by a subcontractor and sub-subcontractors were unenforceable because the contract contained a lien waiver provision. In light of *Dunteman*, B&K contends that to the extent that the contract required B&K to waive its right to a lien, such term would be void as against public policy under section 1.1.

■ We agree with B&K that the language of section 1.1 prohibits agreements to waive any right to enforce or claim a lien whether express or implied as consideration for the contract. Thus, we hold that to the extent that the contract required B&K to provide lien waivers notwithstanding defendants' failure to pay, such a term would be unenforceable and need not be fulfilled for B&K to be entitled to payment.

The *Dunteman* decision notes that not all lien waiver agreements are invalid. *Dunteman*, 181 Ill. 2d at 166. Public Act 87—361, which created section 1.1, also amended section 21 of the Mechanics Lien Act (770 ILCS 60/21 (West 1992)) (Pub. Act 87—361, eff. January 1, 1992), to provide:

"If the legal effect of any contract between the owner and contractor is that no lien or claim may be filed or maintained by any one and the waiver is not prohibited by this Act, such provision shall be binding ***." 770 ILCS 60/21 (West 1992).

The *Dunteman* court rejected the assertion that these sections are in conflict, stating:

"[S]ection 1.1 voids, as against public policy, lien waivers that are executed in *anticipation of and in consideration for obtaining construction contracts*. However, lien waivers would not be prohibited if a party agrees to waive a lien claim *after work has been completed*." (Emphasis in original.) *Dunteman*, 181 Ill. 2d at 166.

Cf. *Ridgeview Construction Co. v. American National Bank & Trust*

*Co.*, 256 Ill. App. 3d 688, 692 n.1 (1993) (questioning the effect of section 1.1 in light of section 21).

Section 1.1 allows waivers and releases of mechanics liens as long as they are not given in consideration for obtaining a contract. For example, a subcontractor may provide a lien waiver in consideration for final payment if, after the work has been completed, there is some dispute as to the amount owed and the parties reach a new agreement to end the dispute by providing a final payment in exchange for a lien waiver and release. This is not the case here.

 The effect of the contract term in the instant case, as asserted by defendants, is that B&K has waived its right to pursue a lien in consideration for obtaining the contract. While the contract does not affirmatively state that B&K has waived its lien rights, under defendants' interpretation, the contract contains an implied waiver because B&K must waive the lien rights in order to require full performance on the contract. The promise to waive lien rights was given in consideration for the promise of payment. Thus, to the extent that the contract required a final lien waiver as a condition for defendants' full payment, that term is void and B&K was not required to show its fulfillment.

 To prevail on its claim, B&K must still show that it fulfilled all other requirements under the contract. The letters attached to B&K's motion for summary judgment indicate that B&K's offer to provide the other documents was rejected by defendants, who insisted on a final lien waiver and release. We conclude that the record demonstrated that B&K had a claim for breach of contract to the extent of the base contract. We therefore affirm the circuit court's grant of partial summary judgment and the denial of the motion to reconsider that issue.

 American and Trapani also argue that the circuit court erred in refusing to grant their request for attorney fees. An unsuccessful party in a lawsuit can be held responsible for the other party's attorney fees where a contract provides for an award of fees. See *Grossinger Motorcorp, Inc. v. American National Bank & Trust Co.*, 240 Ill. App. 3d 737, 752 (1992). A contractual provision for attorney fees must be strictly construed and the court must determine the intention of the parties with respect to the payment of fees. *Grossinger*, 240 Ill. App. 3d at 753. The contract in this case provided that in the event of litigation involving the contractor and subcontractor, the prevailing party shall be paid its attorney fees and expenses and costs by the losing party. We agree with the circuit court that neither Trapani nor B&K can be said to have been the prevailing party. They both won and lost on claims in the proceedings below. See *Raffel v.*

*Medallion Kitchens of Minnesota, Inc.*, 139 F.3d 1142 (7th Cir. 1998) (no abuse of discretion in court's finding that case was a draw and therefore no award of attorney fees).

■ American and Trapani also contend they were entitled to recover their attorney fees pursuant to section 17(c) of the Mechanics Lien Act (770 ILCS 60/17(c) (West 1996)), which provides for an award of fees in cases where the liens were not well grounded in fact or law. However, this provision applies only to lien claims perfected on or after August 8, 1995 (770 ILCS 60/17(e) (West 1996)) and does not apply here.

■ American and Trapani also assert that the circuit court abused its discretion in refusing to award fees pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137), which authorizes the circuit court to order a party to pay the other party's attorney fees where a party files a pleading or other document that is not grounded in fact, warranted by existing law or a good-faith argument of the extension, modification, or reversal of existing law. The determination of whether to impose such sanctions under Rule 137 lies within the circuit court's discretion and this court will not disturb the decision absent an abuse of that discretion. *Doe v. Roe*, 289 Ill. App. 3d 116, 131 (1997). We do not find the filings in this case to be baseless or completely unwarranted. The circuit court did not abuse its discretion in refusing to impose sanctions under this rule.

■ On a final note, B&K has moved this court for an award of appellate attorney fees. Supreme Court Rule 375(b) (155 Ill. 2d R. 375(b)) provides that if an appeal is frivolous, not taken in good faith, or is for an improper purpose, this court may impose a sanction on an appealing party, including an order to pay the other parties' attorney fees. We do not deem this appeal frivolous, lacking in good faith, or otherwise improper.

B&K has also moved for an award of appellate attorney fees against Trapani pursuant to the prevailing party provision in the subcontract. Because we affirm the lower court's orders, there is still no prevailing party here. Both parties have won and lost. While Trapani may be said to have "lost" its appeal, B&K did not file a notice of appeal and has not achieved any greater benefit or affirmative recovery than it had at the time of the lower court's disposition. See *Grossinger*, 240 Ill. App. 3d at 753 (party can be considered a "prevailing party" for the purposes of awarding fees when it is successful on any significant issue in the action and achieves some benefit in bringing suit, receives a judgment in its favor, or by obtaining an affirmative recovery); *cf. Wilmette Partners v. Hamel*, 230 Ill. App. 3d 248 (1992) (awarding appellate attorney fees to cross-appellant who

prevailed on appeal as to most issues). We therefore deny the request for appellate attorney fees.

For the reasons stated, we affirm the circuit court's rulings.

Affirmed.

HOURIHANE, P.J., and THEIS, J., concur.