# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 01-3561

188 LLC,

*Plaintiff-Appellant,*

v.

TRINITY INDUSTRIES, INCORPORATED,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 7993—**Suzanne B. Conlon,** *Judge.*

ARGUED JUNE 7, 2002—DECIDED AUGUST 1, 2002

Before BAUER, POSNER and RIPPLE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* 188 LLC ("188"), which leases rail-road tanker cars, appeals from decisions of the district court dismissing Count 1 of its second amended complaint under Federal Rule of Civil Procedure 12(b)(6) and denying 188 leave to amend its complaint to add a Count 2. 188's complaint alleged that Trinity Industries breached its contract to repair some of 188's tanker fleet. The district court held that 188's suit was barred by a limitation of remedies provision, which it held was part of the contract as a matter of law. On appeal, 188 contends that the limitation of remedies provision was never a part of the contract; it

also submits that the district court erred in denying 188 leave to amend its complaint to add Count 2. For the reasons set forth in the following opinion, we affirm in part, reverse in part and remand this case to the district court for further proceedings.

# I

## BACKGROUND

### A.

188 is in the business of leasing railroad tanker cars. 188 and Trinity negotiated a contract under which Trinity would repair approximately 168 of 188's tankers. The contract consisted of two documents: 1) a January 10, 2000 letter proposal from Trinity to 188 that detailed the services to be performed and the price of the services ("Term Sheet" or "January 10 letter"); 2) a letter from 188 to Trinity dated February 15, 2000 ("February 15 letter"), and signed by the parties on February 17, 2000. The February 15 letter specifically incorporated the Term Sheet and added several clarifications. On the first page of the Term Sheet was the following statement: "Sales of all services and materials are subject to the general terms and conditions on the reverse side." R.35, Ex.A, Ex.1.

The parties dispute what, if anything, actually was on the reverse side of the Term Sheet. In its second amended complaint, which is the subject of this appeal, 188 alleged that the reverse side of the Term Sheet was blank. Trinity argued that "Trinity Railcar Repair General Terms and Conditions Form 4," contained the terms and conditions referenced on the first page of the Term Sheet, and that 188 was bound by those terms whether Form 4 was printed on the back of the Term Sheet or not. R.35, Ex.A, Ex.2.

Form 4 contains a limitation of remedies provision that, were it part of the contract, would have barred the relief sought in its second amended complaint. The form is a one-page document consisting of four sections denominated by roman numerals. Section II is entitled "Warranty." R.35, Ex.A, Ex.2. It begins by stating: "Trinity's standard limited warranty set forth below shall be applicable to any repair services performed." *Id.* In further relevant part, Section II states:

> TRINITY'S LIABILITY FOR ANY AND ALL LOSSES AND DAMAGES RESULTING FROM ANY CAUSE WHATSOEVER, INCLUDING TRINITY'S NEGLIGENCE, ALLEGED DAMAGES OR DEFECTIVE GOODS, IRRESPECTIVE OF WHETHER SUCH DEFECTS ARE DISCOVERABLE OR LATENT, SHALL BE LIMITED TO THE REPAIR OR REPLACEMENT AT THE ELECTION OF TRINITY, AT TRINITY'S RAILCAR REPAIR SHOP OR AT A SHOP SELECTED BY TRINITY, OF ANY PART OR PARTS OF ANY CAR (A) THAT SHALL, WITHIN ONE YEAR AFTER DELIVERY OF SUCH CAR, BE RETURNED TO TRINITY WITH TRANSPORTATION CHARGES PREPAID AND (B) THAT TRINITY'S EXAMINATION SHALL DISCLOSE TO ITS SATISFACTION TO HAVE BEEN SO DEFECTIVE. IN NO EVENT, INCLUDING THE CASE OF A CLAIM FOR NEGLIGENCE, SHALL TRINITY BE LIABLE FOR INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES. . . . AS A MATERIAL INDUCEMENT TO TRINITY TO ENTER INTO AND PERFORM THIS AGREEMENT, AND AS A MATERIAL PORTION OF THE CONSIDERATION TO BE RECEIVED BY TRINITY FOR THE PERFORMANCE OF THE WORK DESCRIBED IN THIS CONTRACT, CUSTOMER HEREBY AGREES THAT TRINITY SHALL HAVE NO LIABILITY TO CUS-

**TOMER FOR INDIRECT, SPECIAL OR CONSE-
QUENTIAL DAMAGES ARISING FROM A BREACH
OF THIS CONTRACT BY TRINITY, A BREACH OF
WARRANTY EXPRESSLY SET FORTH IN THIS
CONTRACT, OR FROM ANY CAUSE ARISING
FROM THIS CONTRACT.**

*Id.* (capitalization and bold print in original).

## B.

A brief recitation of the procedural history of this action will provide needed context for the resolution of the issues before us.

188's initial complaint was filed on December 20, 2000. Trinity moved to dismiss, and the district court suggested that 188 amend its complaint. 188 followed this advice and, with the permission of the court, filed an amended complaint on April 2, 2001. This first amended complaint included a breach-of-contract count that corresponds to Count 1 at issue in this appeal. With respect to Form 4, the first amended complaint alleged: "Plaintiff has performed all of the covenants and conditions of said contract, having specifically excluded from the contract Trinity Railcar Repair General Terms and Conditions—Form 4, with Defendant's consent." First Amended Complaint ¶ 5, R.35, Ex.A. In this complaint, 188 also alleged violations of the Illinois Consumer Fraud Act and tortious interference with contractual relations. Trinity moved to dismiss the first amended complaint, and the district court granted the motion, without prejudice.

188 then filed a motion for leave to file a second amended complaint, this time with two counts, both alleging breach of contract. In the second amended complaint, Form 4 was addressed tangentially in Count 1 and directly in Count 2. In Count 1, the complaint alleged: "Although the bottom

of the first page of Exhibit B states that other 'general terms and conditions' are 'on the reverse side. . . .,' no other terms or conditions were on the reverse side of Exhibit B or otherwise were attached to the document transmitted (by facsimile or mail delivery), nor communicated in any other way to Plaintiff at the time of the formation of the Contract." Second Amended Complaint ¶ 8. In Count 2, the complaint alleged: "However, even if the general terms and conditions submitted by Defendant and attached as Exhibit C hereto were part of the contract, those designated 'Warranty' provisions do not apply to Plaintiff's damages for breach of the Contract. . . ." Second Amended Complaint ¶ 16. The district court granted the motion to amend with respect to Count 1, but denied it with respect to Count 2 on the ground that "Count II does not actually state an additional contract claim, but rather raises new arguments as to why 188 was not bound by Trinity's general terms and conditions." July 9, 2001 Order. Trinity then moved to dismiss Count 1 under Rule 12(b)(6).

The district court granted Trinity's motion and dismissed Count 1 with prejudice. Relying on an earlier decision of the Northern District of Illinois, the court concluded that the reference to "general terms and conditions" on the first page of the Term Sheet was sufficient to incorporate Form 4 into the parties' contract. The district court further concluded that the limitation of remedies provision barred the relief sought in Count 1 of the second amended complaint. 188 appealed both the dismissal of Count 1 and the denial of leave to amend its complaint to add Count 2.

## II

### DISCUSSION

The district court dismissed Count I of 188's second amended complaint because of 188's "failure to state a claim

upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Specifically, the court held that Form 4 was a part of the parties' contract and that, consequently, Form 4's limitation of remedies provision barred 188's claim. We review this determination de novo. *See Help at Home, Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 752 (7th Cir. 2001).

## A.

We first address 188's contention that the district court should not have considered Form 4 at all. 188 argues that, because it neither attached Form 4 to Count 1 of its complaint nor referenced Form 4 in Count 1, the district court could not consider Form 4 on a motion to dismiss. 188 contends that the district court should have either converted the motion to a motion for summary judgment and permitted additional evidence, or ignored Form 4 altogether.

Federal Rule of Civil Procedure 10(c) provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). It is also well-settled in this circuit that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss." *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). "[T]his is a narrow exception" to the general rule that when additional evidence is attached a motion to dismiss, "the court must either convert the 12(b)(6) motion into a motion for summary judgment under Rule 56 . . . or exclude the documents attached to the motion to dismiss and continue under Rule 12." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). While narrow, this exception is "aimed at cases interpreting, for example, a contract." *Id.*

Form 4 fits within this narrow exception. The contract appended to the second amended complaint contains the statement: "Sales of all services and materials are subject to the general terms and conditions on the reverse side." R.35, Ex.A, Ex.1. Trinity argued in its motion to dismiss that Form 4 provided those terms and conditions referenced in the parties' contract. Although, as we shall discuss below, there remain factual issues as to whether Form 4 actually was incorporated into the contract, the district court properly considered the document. The purpose of the exception is to prevent parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents. *See Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998). If Form 4 was indeed on the reverse side of the parties' contract or otherwise was incorporated into it, then Form 4 is relevant and was properly considered. Trinity, by attaching Form 4 to its motion to dismiss, in effect alleged that 188 had included with its complaint only those portions of the contract beneficial to 188. The district court needed to view Form 4 to understand the nature of the dispute between the parties. Consequently, the district court did not err in considering Form 4.

### B.

We turn now to Trinity's contention that 188 admitted the applicability of Form 4 and that it is bound by that admission. Specifically, Trinity submits that, because 188 admitted that it was aware of Form 4's terms in its first amended complaint, it was bound by this admission and could not allege that it was unaware of Form 4 in its second amended complaint. Trinity cites no specific authority for this proposition; it simply points to cases holding that parties are bound by admissions and allegations in their

pleadings. *See, e.g., Soo Line R.R. Co. v. St. Louis S.W. Ry. Co.,* 125 F.3d 481, 483 (7th Cir. 1997); *Keller v. United States,* 58 F.3d 1194, 1198 n.8 (7th Cir. 1995). What Trinity does not discuss is the applicable rule when, as here, the plaintiff has amended his complaint and the alleged admission was made in a now-superseded pleading.

When a party has amended a pleading, allegations and statements in earlier pleadings are not considered judicial admissions. *See Moriarty v. Larry G. Lewis Funeral Dirs. Ltd.,* 150 F.3d 773, 777-78 (7th Cir. 1998). "An amended pleading ordinarily supersedes the prior pleading. The prior pleading is in effect withdrawn as to all matters not restated in the amended pleading and becomes functus officio." *Nisbet v. Van Tuyl,* 224 F.2d 66, 71 (7th Cir. 1955). Under some circumstances, a party may offer earlier versions of its opponent's pleadings as evidence of the facts therein, but they are not judicial admissions, and the amending party may offer evidence to rebut its superseded allegations. *See DePaepe v. Gen. Motors Corp.,* 141 F.3d 715, 719 (7th Cir. 1998); *Nisbet,* 224 F.2d at 71. We express no opinion about whether 188's earlier pleadings would be admissible on remand. *Cf. DePaepe,* 141 F.3d at 719 (stating that decision to admit or exclude superseded pleadings was within district court's discretion). 188's first amended complaint was superseded by Count 1 of its second amended complaint; 188 is not bound by the factual allegations made in the earlier pleading.

## C.

We review the district court's grant of a Rule 12(b)(6) motion de novo. *See Help at Home, Inc. v. Med. Capital, L.L.C.,* 260 F.3d 748, 752 (7th Cir. 2001). We construe the pleadings in the light most favorable to 188. *See id.* The question is

a simple one: As a matter of law, is Form 4 a part of the parties' contract? The district court answered that question in the affirmative, drawing on the principle of contract law that contracts may incorporate other documents by reference, and the parties are bound by those other documents. The district court held that the contract's incorporation clause—"Sales of all services and materials are subject to the general terms and conditions on the reverse side,"—made Form 4 an enforceable part of the parties' contract. On this point, we are in respectful disagreement with the district court. At this point in the litigation, we cannot conclude that, as a matter of law, Form 4 was incorporated into the contract.

In this case, when the district court's jurisdiction is based on diversity of citizenship of the parties, we apply the law of Illinois.[1] Under Illinois law, a document is incorporated by reference into the parties' contract only if the parties intended its incorporation. *See Wilson v. Wilson*, 577 N.E.2d 1323, 1329 (Ill. App. Ct. 1991). "For a contract to incorporate all or part of another document by reference, the reference must show an intention to incorporate the document and make it part of the contract." *Id.* Illinois requires that incorporation be clear and specific. *See, e.g., Kirschenbaum v. Northwestern Univ.*, 728 N.E.2d 752, 762 (Ill. App. Ct. 2000) ("Contracts which specifically incorporate other documents by reference are to be construed as a whole with those other documents."); *Jago v. Miller Fluid Power Corp.*, 615 N.E.2d 80, 82 (Ill. App. Ct. 1993) ("The parties to a contract may incorporate by reference another document if that intention is clearly shown on

---

[1] Although, at one point in the district court proceedings, Trinity submitted that Texas law was applicable, the parties do not dispute, at this point, the applicability of Illinois law.

the face of the contract."). The party seeking to enforce the terms of an allegedly incorporated document "must show . . . an intention to incorporate the document and make it a part of the contract." *Arneson v. Bd. of Trustees, McKendree Coll.*, 569 N.E.2d 252, 256 (Ill. App. Ct. 1991). When the contract incorporates a specific document by name, both parties are on notice and are bound by the terms of that document. *See J.M. Process Sys., Inc. v. W.L. Thompson Elec. Co.*, 578 N.E.2d 264, 267 (Ill. App. Ct. 1991); *Wilson*, 577 N.E.2d at 1329-30; *Ridgeview Constr. Co. v. Am. Nat'l Bank & Trust Co.*, 563 N.E.2d 986, 990 (Ill. App. Ct. 1990). However, when the contract does not refer to a specific document but to terms located somewhere on the contract document itself, whether those terms are incorporated is a question of fact about the parties' intent and cannot be answered simply by reference to the contract documents. *See Landmark Structures, Inc. v. F.E. Holmes & Sons Constr. Co.*, 552 N.E.2d 1336, 1342-43 (Ill. App. Ct. 1990).

   With these principles in mind, we turn to the facts of the present case. What we know from the pleadings and the contract documents, read in the light most favorable to 188, is that the parties agreed on February 17, 2000, to a contract, the terms of which were described in two letters: the Term Sheet and the February 15 letter. The first page of the Term Sheet contained a statement that: "Sales of all services and materials are subject to the general terms and conditions on the reverse side." R.35, Ex.A, Ex.1. 188 alleges that "no other terms or conditions were on the reverse side of Exhibit B or otherwise were attached to the document transmitted (by facsimile or mail delivery), nor communicated in any other way to Plaintiff at the time of the formation of the Contract." Second Amended Complaint ¶ 8. We must accept this allegation as true for the purpose of evaluating Trinity's Rule 12(b)(6) motion.

On this record, we cannot say that Form 4 was incorporated into the parties' contract as a matter of law. There is no incorporation clause that resolves this dispute in favor of Trinity. Indeed, the February 15 letter states that "[t]he 1/10/00 proposal and terms of this letter are the final terms of our agreement." R.35, Ex.A, Ex.1. Neither the "1/10/00 proposal" nor the February 15 letter refers to Form 4 or to "Trinity Railcar Repair General Terms and Conditions" by name. *See id.* The incorporation clause on the face of the Term Sheet does not specifically refer to Form 4 or any specific set of terms and conditions. There is also no copy of the contract in the record that has Form 4 or any other list of terms and conditions printed on the back of the Term Sheet.

In *Landmark*, the plaintiff, Landmark Structures, contracted with the defendant, Holmes, to provide prefabricated wall panels to Holmes for its use in the construction of three apartment complexes. *See Landmark*, 552 N.E.2d at 1336-37. Holmes was displeased with the quality of Landmark's products and refused to pay on the ground that the panels were nonconforming. *See id.* at 1337. Landmark sued, and Holmes brought a counterclaim. After a bench trial, the trial court ruled in favor of Holmes. *See id.* On appeal, Landmark argued that Holmes' counterclaims were barred by a disclaimer of warranties printed on the back of the first page of the parties' contract. *See id.* at 1342. Landmark produced a copy of the contract with the limitation provision printed on the back and the statement: "PER 'CONDITION OF SALE' *REVERSE SIDE*" printed on the front page. *Id.* at 1337-38 (emphasis in original). Holmes produced a copy of the contract with the reverse side of the first page left blank. *See id.* at 1338, 1343.

The question in *Landmark*, as here, was whether the terms on the reverse side of Landmark's copy of the con-

tract were intended by the parties to become part of the contract. *See Landmark*, 552 N.E.2d at 1342. The trial court had heard testimony from Holmes' president that, when he examined and signed the contract, there were no additional terms on the reverse side of the first page. *See id.* at 1342-43. Holmes' president further testified that his copy of the contract appeared to be a photocopy of Landmark's and that there had been no negotiation over any disclaimer of warranties. *See id.* at 1343. On these facts, the Illinois Appellate Court concluded that "[t]he trial court could have determined from the evidence that Holmes had no knowledge of the disclaimer of warranties, or reason to believe that such a disclaimer existed, at any time prior to and during the execution of the contract . . . ." *Id.* Thus, Holmes could not be held to contractual terms of which it was unaware and over which it had not negotiated. *See id.*

As in *Landmark*, this case presents a disputed issue of fact that cannot be resolved by reference to 188's complaint and the contract documents before the court. In *Landmark*, it could not be determined simply from the face of Landmark's copy of the contract that the disclaimer of warranties had received the assent of both parties. Here, there remain factual questions about whether the parties ever agreed that Form 4 was incorporated into the contract. Resolution of this issue may require that the district court address a variety of subsidiary factual issues: when was Form 4 transmitted from Trinity to 188; what negotiations, if any, took place concerning Form 4's incorporation into the contract; and whether there were additional documents exchanged by the parties between the January 10 Term Sheet and the February 15 letter that cemented the parties' contract. In short, at this pleading stage, there is no intention to incorporate Form 4 that is "clearly shown on the face of the contract." *Jago*, 615 N.E.2d at 82. Indeed, this case is more problematic than *Land-*

*mark*. In *Landmark*, the party urging incorporation was at least able to produce a copy of the contract with the disputed terms printed on the reverse side. The record before us in this case contains no such document, and Trinity has not claimed that one exists. The pleadings and the contract itself simply do not resolve these factual concerns.

The cases relied upon by the district court and urged as the relevant precedent by Trinity do not support the district court's resolution of this case at the pleadings stage. For example, in *Andren & Associates v. Scitex American Corporation*, No. 95 C 276, 1995 WL 669109 (N.D. Ill. Nov. 8, 1995), the case that formed the precedential foundation of the district court's decision, the sales agreement stated that "the transaction is 'pursuant to IRIS's standard Terms and Conditions of Sales, attached, together with pricing and delivery terms which are accepted by Buyer.' " *Andren*, 1995 WL 669109 at *2. The plaintiff claimed that it had never seen the Terms and Conditions and, thus, that they were not part of the contract. The court determined that there was no factual dispute about whether the Terms and Conditions were incorporated by reference because "[t]he Sales Agreement explicitly provides that Andren accepted those additional terms" and Andren had not challenged the authenticity of the Sales Agreement. *Id.* at *2. The court in *Andren* also distinguished *Landmark*: "In contrast to the contract in *Landmark*, the Sales Agreement here explicitly referred to a specific document the terms of which were to govern the sale, not just to general 'conditions' which may or may not appear on the reverse side of the page." *Id.* at *3. Like *Landmark*, and unlike *Andren*, the Term Sheet does not refer to a specific document, but rather to any terms appearing on the reverse side.

Even without the specific Illinois case law on point, general principles of contract interpretation would require reversal. "Sales of all services and materials are subject

to the general terms and conditions on the reverse side," with nothing written on the reverse side, cannot be read to incorporate explicitly any specific document. For example, the Term Sheet might be a preprinted form, with the generic statement at the bottom of the first page that any additional terms specific to a particular contract will be written on the back. Or the statement might evidence the parties' intent to incorporate some terms but, given the ambiguities in the contract, it cannot support the incorporation of any specific terms at the Rule 12(b)(6) stage. The face of the contract simply does not incorporate Form 4 to the degree of certainty necessary to resolve this case at this procedural juncture.

## D.

Finally, we address whether the district court erred in denying leave to amend the complaint to add Count 2. Count 2, subtitled, "Alternative Contract Claim," alleged, in pertinent part, that "even if the general terms and conditions submitted by Defendant and attached as Exhibit C hereto were part of the contract, those designated 'Warranty' provisions do not apply to Plaintiff's damages for breach of the Contract . . . ." Second Amended Complaint, ¶ 16. The district court held that Count 2 "does not actually state an additional contract claim, but rather raises new arguments as to why 188 was not bound by Trinity's general terms and conditions." July 9, 2001 Order.

"Rule 15(a) provides that leave to amend a pleading shall be freely given when justice so requires." *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002). However, this right is not absolute, and we think that the district court was on solid ground in refusing permission to make this particular amendment. Count 2 of 188's second amended complaint did not state a new claim; rather,

as the district court held, Count 2 was simply an additional argument supporting 188's breach-of-contract claim under Count 1. *Cf. Archer Daniels Midland Co. v. Hartford Fire Ins. Co.*, 243 F.3d 369, 374 (7th Cir. 2001) (affirming the district court's decision to deny leave to amend and stating: "Complaints need not plead law, so why four claims that differ only in the legal formulation for a single grievance?"). The district court acted within its discretion in denying 188 leave to amend its complaint to add Count 2.

## Conclusion

The district court properly considered Form 4 in deciding Trinity's Rule 12(b)(6) motion. However, 188 made no binding judicial admission that Form 4 was a part of the parties' contract. The district court erred in concluding that, as a matter of law, Form 4 was a part of the parties' contract. The district court did not abuse its discretion in denying 188 leave to amend its complaint to add a second count. Accordingly, the decision of the district court is AFFIRMED in part, REVERSED in part, and the case is REMANDED for further proceedings consistent with this opinion. 188 may recover its costs in this court.

AFFIRMED IN PART, REVERSED IN PART
and REMANDED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*