**Robert S. WILHELM, not personally but solely in his capacity as Executor of The Estate of Margaret H. Wilhelm, deceased, Plaintiff–Appellant,**

v.

**A.G. EDWARDS & SONS, INCORPORATED, Defendant–Appellee.**

No. 02–2886.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 12, 2003.

Decided March 13, 2003.

Before BAUER, POSNER, and RIPPLE, Circuit Judges.

ORDER

On December 3, 2001, Robert Wilhelm, acting as the executor of Margaret Wilhelm's estate, filed suit in Illinois state court against A.G. Edwards & Sons, Inc. ("A.G.Edwards"). The complaint alleged that A.G. Edwards had breached its fiduciary duty in connection with the creation and use of a margin trading account. The estate sought to recover the value of certain American Electric Power ("AEP") stock sold from the account and the lost dividend income that the stock would have generated. After the case was removed to federal court, the district court granted A.G. Edwards' motion to dismiss on the ground that the estate's cause of action was time-barred under the Illinois Securities Law's ("ILS") five-year statute of re-

pose, 815 Ill. Comp. Stat. 5/13(D). For the reasons that follow, we affirm the judgment of the district court.

The estate alleged the following facts in its complaint; we accept these allegations as true for purposes of reviewing the district court's dismissal of the complaint. *See Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 614 (7th Cir.2002). Margaret Wilhelm, along with her husband Gilmer, jointly owned 6,348 shares of AEP stock. Following Gilmer's death in 1989, the AEP stock remained in the joint names of Margaret and Gilmer, but Margaret's son Robert (now the executor of her estate) acted as the physical custodian of the stock. Shortly after Gilmer's death, Margaret's other son, Frank, surreptitiously removed Margaret from her home state of West Virginia, transported her to Illinois and began to loot her assets.

During November of 1993, Frank took Margaret to A.G. Edwards' branch office in Woodstock, Illinois and presented her as a person who was suitable to open a margin trading account. At this initial meeting, A.G. Edwards learned that Frank intended to deposit his mothers' AEP shares into the account. The value of Margaret's AEP stock at this time was $230,115. Frank told A.G. Edwards that the actual certificates had been lost in a fire and that his mother intended to hold these securities in a joint trading account with Frank.

Margaret was mentally incompetent during this time; she lacked a basic understanding of her personal and financial affairs. Notwithstanding Margaret's apparent disability, A.G. Edwards took no steps to ascertain her suitability for opening a margin trading account. Specifically, A.G. Edwards allowed Margaret and Frank to open a margin trading account as joint tenants without ascertaining Margaret's inability to understand financial matters or inquiring into the legal rights of Frank to represent Margaret's affairs. In addition, A.G. Edwards allowed Margaret's AEP stock to be reissued in the joint names of Frank and Margaret without ascertaining Margaret's wishes. Once the trading account was opened and funded with Margaret's AEP stock, A.G. Edwards allegedly breached its fiduciary duty by allowing Frank to borrow large sums of money against the account and by systematically selling off the pledged stock to cover the margin until the account was exhausted. By the time the account was closed in November of 1994, the account was worth less than $1,500. Margaret died on January 15, 2001, and the estate filed suit against A.G. Edwards for breach of fiduciary duty on December 3, 2001.

The estate submits that the district court erred when it granted A.G. Edwards' motion to dismiss the complaint as time-barred under the ISL's five-year statute of repose because (1) its common law claim for breach of fiduciary duty is not controlled by the ISL's statute of repose, and (2) even if it is, the statute has not run because it was tolled due to Margaret's mental incompetency. A.G. Edwards, on the other hand, maintains that the district court properly dismissed the estate's complaint as time-barred because the cause of action is reliant upon matters for which relief is granted by the ISL and the statute's five-year repose period is not subject to tolling. We review the district court's decision dismissing the estate's complaint de novo. *See 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir.2002).

█ Section 13(D) of the ISL provides: No action shall be brought for relief under this Section or upon or because of any of the matters for which relief is granted by this Section after 3 years from the date of sale; provided, that if the party bringing the action neither knew nor in the exercise of reasonable

diligence should have known of any alleged violation of subsection E, F, G, H, I or J of Section 12 of this Act which is the basis for the action, the 3 year period provided herein shall begin to run upon the earlier of:

(1) the date upon which the party bringing the action has actual knowledge of the alleged violation of this Act; or

(2) the date upon which the party bringing the action has notice of facts which in the exercise of reasonable diligence would lead to actual knowledge of the alleged violation of this Act; but in no event shall the period of limitation so extended be more than 2 years beyond the expiration of the 3 year period otherwise applicable.

815 Ill. Comp. Stat. 5/13(D). According to its terms, the ISL's statute of limitations, which also operates as a statute of repose, applies not only to actions brought directly under the ISL, but also to common law claims premised "upon or because of any of the matters for which relief is granted by" the Act. *Id.* Relying on this provision, the Illinois Court of Appeals has held that the ISL's limitations period applies to a stock purchaser's complaint for breach of fiduciary duty, fraud and negligent misrepresentation arising out of the sale of stock because such "causes of action are reliant 'upon ... matters for which relief is granted' by the Securities Law." *Tregenza v. Lehman Bros., Inc.*, 287 Ill.App.3d 108, 222 Ill.Dec. 607, 678 N.E.2d 14, 15 (1997) (quoting 815 Ill. Comp. Stat. 5/13(D)). Accordingly, if the estate's claim is reliant upon matters for which relief is granted by the ISL, then the ISL's statute of repose applies to the estate's claim, even though the estate has chosen not to proceed under the Act.

We believe that the district court correctly determined that the estate's claim is reliant upon matters for which the ISL provides relief. The ISL prohibits "any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof." 815 Ill. Comp. Stat. 5/12(F). Although the estate makes a number of allegations, the crux of its complaint is that Margaret was injured when A.G. Edwards: "(1) allowed her to open a joint [trading] account with her son Frank, despite her obvious mental disability; (2) accepted Frank's representation that [the] original stock certificates had been destroyed, and had the stock, which was owned solely by Margaret, reissued in Frank's name as well; (3) accepted a deposit of more than $230,000 of the reissued stock into the joint account; and (4) allowed Frank to deplete the account through a number of transactions, including trade orders." *Wilhelm v. A.G. Edwards & Sons, Inc.*, No. 02 C 0031, 2002 WL 1377568, at *5 (N.D.Ill. June 24, 2002) (citing Complaint at ¶¶ 11–12). Taking these allegations together, we are convinced that the estate's complaint sufficiently alleges that A.G. Edwards engaged in a "course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof." 815 Ill. Comp. Stat. 5/12(F).

We are not persuaded by the estate's arguments to the contrary. The estate first contends that the ISL does not reach its cause of action because a "sale" did not occur between Margaret and A.G. Edwards. However, the complaint alleges that Margaret pledged 6,348 shares of AEP stock to secure the margin account that she and Frank opened with A.G. Edwards and that A.G. Edwards, in turn, systematically sold off the pledged stock to satisfy the margin until the account was exhausted. The ISL broadly defines the sale of securities to include "every contract

of sale or disposition of a security or interest in a security for value." 815 Ill. Comp. Stat. 5/2.5. As interpreted by the Illinois Court of Appeals, the ISL's definition of a sale "inlcude[s] every transaction which reasonably could be regarded as a sale." *Disher v. Fulgoni*, 161 Ill.App.3d 1, 112 Ill.Dec. 949, 514 N.E.2d 767, 772 (Ill.Ct. App.1987). Notably, § 12(F) of the ISL is patterned after § 17(a)(3) of the Federal Securities Act of 1933, and Illinois courts routinely look to federal case law to interpret this provision. *See Lucas v. Downtown Greenville Investors Ltd. P'ship*, 284 Ill.App.3d 37, 219 Ill.Dec. 475, 671 N.E.2d 389, 395 (Ill.Ct.App.1996); *Adler v. William Blair & Co.*, 271 Ill.App.3d 117, 207 Ill.Dec. 770, 648 N.E.2d 226, 235 (Ill.Ct. App.1995); *Foster v. Alex*, 213 Ill.App.3d 1001, 157 Ill.Dec. 778, 572 N.E.2d 1242, 1245 (Ill.Ct.App.1991). Therefore, we think it relevant that the Supreme Court of the United States has held that a pledge of securities constitutes a sale under the antifraud provisions of the federal securities laws. *See Marine Bank v. Weaver*, 455 U.S. 551, 554 n. 2, 102 S.Ct. 1220, 71 L.Ed.2d 409 (1982) (citing *Rubin v. United States*, 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981) (holding that a pledge of stock as collateral for a bank loan is an offer or sale of a security within the meaning of § 17(a) of the Federal Securities Act of 1933)); *see also United States v. Kendrick*, 692 F.2d 1262, 1264–65 (9th Cir. 1982) (applying *Rubin* to hold that a pledge of securities to secure a margin brokerage account constitutes a purchase and sale for purposes of § 10(b) of the Federal Securities Exchange Act of 1934 and Rule 10b–5). Given the ISL's expansive definition of a sale and the analogous federal precedent, we have little difficulty concluding that a sale of securities took place between Margaret and A.G. Edwards in this case.[1]

The estate next contends that its cause of action is not covered by the ISL because the complaint does not allege that A.G. Edwards (as opposed to Frank) intended to defraud Margaret. The Illinois Court of Appeals has held, however, that, consistent with the Supreme Court of the United States' interpretation of § 17(a)(3) of the Federal Securities Act of 1933 in *Aaron v. SEC*, 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980), *scienter* need not be pled nor proved in a civil case brought under § 12(F) of the ISL. *See Foster*, 157 Ill.Dec. 778, 572 N.E.2d at 1245.

The only remaining issue is whether the ISL's five-year statute of repose has run.

**1.** The estate makes no argument that the ISL does not apply to sellers of securities, nor did it make any such argument in the district court. We note that Margaret did not purchase any securities in connection with the challenged transactions and that at least one Illinois case suggests that only purchasers (as opposed to sellers) of securities may recover under the ISL. Specifically, in *Space v. E.F. Hutton Co., Inc.*, 188 Ill.App.3d 57, 135 Ill. Dec. 710, 544 N.E.2d 67, 70 (Ill.Ct.App.1989), the Illinois Court of Appeals held that a writer of calls on the option market is a seller and not a purchaser of securities and, therefore, may not obtain recovery under the ISL. The court reasoned that, although such a person may be considered a purchaser, he is a purchaser of advice, not securities, and that "[i]t is evident by the very wording of section 13(A) that the remedies under the Illinois Blue Sky Law are available only to purchasers of securities." *Id. Space* specifically addressed only § 13(A) of the ISL, which refers only to purchasers of securities. Section 13(G) of the ISL expressly states that "any party in interest" may seek "rescission of any sales or purchases of securities determined to be unlawful under this Act," 815 Ill. Comp. Stat. 5/13(G). *But see Guy v. Duff & Phelps, Inc.*, 628 F.Supp. 252, 263 (N.D.Ill.1985) (holding that rescission under § 13(G) is "only an adjunct to injunctive relief, where rescission may be needed to render prospective compliance [with the ISL] meaningful or even possible").

Section 13(D) of the ISL provides that "[n]o action shall be brought for relief under this Section or upon or because of any of the matters for which relief is granted by this Section after 3 years from the date of sale." 815 Ill. Comp. Stat. 5/13(D). Accordingly, a potential plaintiff generally has three years from the date of the contested sale in which to file suit. The statute further provides that if a plaintiff "neither knew nor in the exercise of reasonable diligence should have known of any alleged violation ..., the 3 year period provided herein shall begin to run upon the earlier of" actual or constructive knowledge of facts constituting the alleged violation. *Id.* The effect of this provision "is to lengthen the time in which such a suit may be filed, provided that plaintiffs properly allege and demonstrate the requisite grounds." *Rein v. David A. Noyes and Co.*, 230 Ill.App.3d 12, 172 Ill.Dec. 204, 595 N.E.2d 565, 568 (Ill.Ct.App.1992). However, the statute expressly states further that "in no event shall the period of limitation so extended be more than 2 years beyond the expiration of the 3 year period otherwise applicable." 815 Ill. Comp. Stat. 5/13(D). Thus, the ISL's "limitations statute also operates as a statute of repose, barring all claims ... filed more than five years after the sale." *Rein*, 172 Ill.Dec. 188, 595 N.E.2d at 568–59. In contrast to a statute of limitations, "[a] period of repose is one which is intended to terminate the possibility of liability after a defined period regardless of a potential plaintiff's lack of knowledge of his cause of action." *Id.* at 569.

The district court correctly concluded that the estate did not file suit within the five-year repose period. According to the estate's complaint, the allegedly wrongful sales occurred no later than November of 1994, by which time Margaret's account was worth less than $1,500. *See* Complaint at ¶ 13. The estate did not file suit until December 3, 2001, more than seven years later.

■ Finally, the district court correctly rejected the estate's contention that, as a matter of public policy, despite the ISL's clear statutory language, the repose period should be tolled due to Margaret's alleged incompetency. As proof that Illinois' public policy favors protecting the rights of the disabled over preventing the prosecution of state claims, the estate points to a number of causes of action, including those for personal injury and medical malpractice, which are tolled during the plaintiff's period of legal disability. *See* 735 Ill. Comp. Stat. 5/13–211 (providing that persons under a legal disability may bring a personal injury action within two years after the disability is removed); 735 Ill. Comp. Stat. 5/13–212(c) (providing that period of limitations for medical malpractice claims does not begin to run until the disability is removed). However, as the district court correctly noted, those causes of action relied upon by the estate are tolled "only because the statutes that authorize them contain express tolling provisions." *Wilhelm*, 2002 WL 1377568 at *6. The ISL contains no comparable tolling provision; instead, it expressly states that "in no event shall the period of limitation so extended be more than 2 years beyond the expiration of the 3 year period otherwise applicable." 815 Ill. Comp. Stat. 5/13(D). As the district court noted, "statutes of repose are themselves an expression of public policy." *Wilhelm*, 2002 WL 1377568 at *6 n. 3. "Statutes of repose represent a pervasive legislative judgment that justice requires an adversary to be put on notice to defend for a specific period of time, after which the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Sorenson v. Law Offices of Theodore Poehlmann*, 327 Ill.App.3d 706, 262 Ill.Dec. 110,

764 N.E.2d 1227, 1230 (Ill.Ct.App.2002) (internal quotations omitted). Because "a statute of repose is not related to the accrual of any cause of action," Illinois courts routinely have stated that "the injury need not have occurred, much less have been discovered." *Id.* (internal quotations omitted). Accordingly, in the absence of any indication that the Illinois legislature intended to create an exception to the ISL's five-year repose period for mental incompetency, this court will not infer the existence of such an exception.

AFFIRMED