**TELEWIZJA POLSKA USA, INCORPORATED, an Illinois corporation, Plaintiff–Appellant,**

v.

**ECHOSTAR SATELLITE CORPORATION, a Colorado Corporation, Defendant–Appellee.**

No. 02–4332.

United States Court of Appeals, Seventh Circuit.

Argued May 30, 2003.

Decided July 7, 2003.

Rehearing Denied Sept. 10, 2003.

Before FLAUM, Chief Judge, EASTERBROOK, and RIPPLE, Circuit Judges.

## ORDER

Telewizja Polska USA, Inc. ("Polska") brought this action against EchoStar Satellite Corp. ("Echostar"), alleging violations of Section 43(a) of the Lanham Act, various Illinois statutory claims, as well as state common law breach of contract and unjust enrichment claims. EchoStar filed a 12(b)(6) motion to dismiss the complaint. The district court granted EchoStar's motion on December 12, 2002. Polska appeals and contends that the district court misinterpreted the contract between the two parties. We agree. Accordingly, for the reasons set forth in this order, we reverse the judgment of the district court and remand the case for proceedings consistent with this order.

### A.

Polska is a Delaware corporation with its principal place of business in Illinois; it produces Polish language radio and television programming. EchoStar is a Colorado corporation with its principal place of business in Colorado; it broadcasts television and radio programming via satellite to consumers throughout the United States. On April 30, 1998, Polska and EchoStar entered into an agreement by which Polska agreed to provide Polish programming to EchoStar for broadcast on EchoStar's network. EchoStar was to be responsible for advertising and selling subscriptions to consumers; the agreement authorized EchoStar to use Polska's trademarks for this purpose. Revenue was to be shared between the parties pursuant to a schedule set forth in the agreement, and EchoStar was required to account to Polska for the total number of subscribers as of the last day of the preceding month's billing cycle.

The agreement provided that it would "commence on the date first written above [April 30, 1998] and shall continue for three (3) years thereafter [to April 30, 2001.]" R.1–1, Ex.A at 3, ¶ 2. The agreement was not terminated at an earlier time by either party, and it therefore expired after three years on April 30, 2001. Paragraph 2 of the agreement entitled, "TERM," provided:

Network [Polska] agrees that upon the expiration or earlier termination of this Agreement, if EchoStar has already launched the Programming Service on its Satellite, it shall continue to provide EchoStar the Programming Service under the terms and conditions outlined herein for a period of time that is the shorter of twelve (12) months or that number of months necessary for EchoStar to provide the Programming Service to Service Subscribers who bought a multi-month subscription to the Programming Service prior to the receipt by EchoStar of notice of termination of the Agreement.

*Id.* After the three-year term expired, EchoStar continued to sell new subscriptions for Polska's programming and to use Polska's trademarks in its marketing efforts. Polska contends that EchoStar breached the agreement by continuing to sell subscriptions and by failing to account fully for or pay Polska for subscriptions sold after April 30, 2001.

The district court found that the language of the contract was clear and unam-

biguous. *See* R.26 at 5. In its view, the contract provided for a three-year term followed by an additional term of up to twelve months, during which post termination period "EchoStar's rights were not limited in anyway [sic] under the Agreement." *Id.* The court focused on the contractual language stating that, during the post termination period, Polska *"shall continue to provide EchoStar with the Programming Service under the terms and conditions outlined herein." Id.* (emphasis by district court). The district court concluded that this reference to "terms and conditions" meant all terms and conditions of the agreement, which included EchoStar's right to *"offer and sell subscriptions to the Programming Service and [to] conduct customer service functions in accordance with the terms and conditions of th[e] Agreement." Id.* (emphasis by district court). Consequently, the court found no restriction on EchoStar's right to solicit new subscriptions in the post-termination period. *See id.*

The court further reasoned that, if Polska meant to cut off new subscriptions after three years, it should have narrowed the language of the contract. *See id.* at 6. The court therefore granted EchoStar's motions to dismiss on the breach of contract claim. *See id.* Moreover, because it found that the other claims were based on the breach of contract theory, the court dismissed those claims as well. *See id.* at 7–11. Because it agreed with EchoStar's reading of the contract, the district court had no reason to address Polska's claim for an accounting and revenues earned during the post-termination period.

### B.

We review de novo a district court's grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See 188 LLC v. Trinity Indus., Inc.,* 300

F.3d 730, 736 (7th Cir.2002). Moreover, this is a matter of contract interpretation, which we review de novo. *See Bourke v. Dun & Bradstreet Corp.,* 159 F.3d 1032, 1036 (7th Cir.1998).

■ The district court held, and EchoStar maintains, that the contract's terms are "clear and unambiguous," and that the plain language of the contract permits EchoStar to continue to sell subscriptions for up to twelve months because these are the "terms and conditions" contemplated in the "Term." R.26 at 5.

In asking that we reverse that determination, Polska reminds us that we ought to "construe a contract so that each provision or clause is given full force and effect and so that the terms make sense when read together." *Medcom Holding Co. v. Baxter Travenol Labs., Inc.,* 984 F.2d 223, 227 (7th Cir.1993). Polska also notes that, under Illinois law, courts must determine the parties' intent "with reference to the contract as a whole, not merely by reference to particular words or isolated phrases, but by viewing each part in light of the others." *Id.* at 226.

After a review of the entire contact, we respectfully take a different view than the district court. In our view, when reading the contract as a whole, it is apparent that the post-termination period existed to permit the parties to "wind down" their relationship and to protect pre-existing multi-month subscribers. *See Bourke,* 159 F.3d at 1039 ("reference to the purpose of a contract can be a useful aid in construction"). The disputed provision states that the post-termination period shall last for "the shorter of twelve (12) months or that number of months necessary for EchoStar to provide the Programming Service to Service Subscribers who bought a multi-month subscription to the Programming Service prior to the receipt by EchoStar of notice of termination." R.1–1, Ex.A at 3,

¶ 2. In the context of the entire agreement, the most natural reading of this clause is that it was intended to ensure that existing subscribers continued to receive programming for up to one year, while permitting the parties to terminate their relationship.

The clause that the district court found determinative defined only *Polska's* obligation to "continue to provide EchoStar the Programming Service under the terms and conditions outlined herein." *Id.* This reference to "terms and conditions" most naturally refers to Polska's obligation to provide Programming Service, defined in Exhibit A to the contract as "a single video Polish language television channel known as 'TV Polonia' and produced by Telewizja Polska in Warsaw, Poland, and two Polish language radio channels known as 'Polish Radio Program 1' and 'Polish Radio Program 3.'" *Id.* at 15. Additionally, paragraph 6 of the Agreement outlines the specific requirements or "terms and conditions" for uplinking the Program Services to EchoStar's network. *See id.* at 6–7.

In short, Polska presents the most natural reading of the contractual provisions as a whole. The Term provision was intended to protect existing subscribers who had paid for service extending beyond the expiration of the three-year contractual period. Consequently, we mut conclude that the district court erred in dismissing Polska's claims based on the conclusion that there could be no breach of contract.

### C.

■ Polska also claims that the district court erred by failing to address Polska's argument that EchoStar did not account for and share revenue earned in the twelve-month post termination period. The relevant contract provision addressing Polska's right to a monthly accounting provides:

4.1 Reports. Within thirty (30) days after the end of each calendar month during the Term, EchoStar shall supply to [Polska] the total umber of Service Subscribers as of the last day of the billing cycle for the immediately preceding month. . . .

R.1–1, Ex.A at 4, ¶ 4.1. In its amended complaint, Polska's breach of contract claim alleged:

15. In breach of the Agreement, EchoStar continued to sell new subscriptions to Polska's programming and used Polska's trademarks for its own marketing purposes after the Agreement authorizing such use had terminated.

16. EchoStar has further failed to account to Polska for the subscriptions it sold or the revenue it derived from such sales subsequent to April 30, 2001 in violation of paragraph 4.1 of the Agreement.

R.10 at 8. The district court's order granting EchoStar's motion to dismiss did not address Polska's claim that EchoStar had failed to account for and share revenue earned during the post-termination period.

EchoStar claims that it had no duty to account for "subscriptions sold or revenue derived" because ¶ 4.1 of the contract only requires that it account for the total number of subscribers at the end of each month. It points out that the complaint does not allege precisely this obligation. EchoStar's position is reminiscent of the requirements imposed by a strict fact pleading regime; however, the Federal Rules of Civil Procedure envision only notice pleading. The complaint clearly placed EchoStar on notice that Polska alleged that Echostar had failed to account for subscriptions sold and revenue earned under the agreement. *See Lewis v. Local Union No. 100 of the Laborers' Int'l Union of N. America, AFL–CIO,* 750 F.2d 1368, 1373 (7th Cir.1984) (stating that even

vague allegations not identifying particular theory may set forth a claim for breach of contract under notice pleading); *see also Petri v. Gatlin,* 997 F.Supp. 956, 963–65 (N.D.Ill.1997) (rejecting Illinois' fact pleading requirements in a diversity breach of contract case).[1]

Alternately, EchoStar argues that Polska waived its right to an accounting, for it failed to make a timely request under the contract. The contract provides:

> 4.3 Audit Rights. No more than once every twelve (12) months during the Term and on a one-time basis only for one (1) year thereafter, and upon at least thirty (30) business days advance written notice, [Polska] shall have the right, through an independent accounting firm, to perform an audit at EchoStar's offices, during normal business hours, of the books and records of EchoStar with respect to the Programming Service only for the sole purpose of verifying Shared Revenue payments....

R.1–1, Ex.A, at 4. Polska requested an audit on April 25, 2002, five days before the post-termination period ended on April 30, 2002. *See* R.16, Ex.B. EchoStar claims that, because it was not given the mandatory thirty business day notice and because the one-year term expired before thirty days passed, EchoStar has no obligation to grant Polska an audit. We think that a more natural reading of the contract requires that EchoStar honor a request for an accounting made within less than thirty days of the expiration of the one-year period, with the audit to be conducted after the termination of the one-year term. Indeed, even absent the contractual provision, pursuant to ¶ 4.1, EchoStar would be required to account for the subscriptions that it sold and to share the profits.

For these reasons, we reverse the judgment of the district court and remand the case for proceedings consistent with this order.

REVERSED and REMANDED

1. EchoStar also contends that the amended complaint was not properly filed because Polska did not secure EchoStar's assent to file or secure leave from the court to file. However, no such leave was required because EchoStar's Rule 12(b)(6) motion was not a responsive pleading that triggers the requirement that a party seek leave to amend. *See*

*Camp v. Gregory,* 67 F.3d 1286, 1289 (7th Cir.1995).

