2024 IL App (1st) 221404-U

No. 1-22-1404

Third Division
March 13, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

|  |  |  |
|---|---|---|
| ERIC FRANKEL, | ) | Appeal from the Circuit Court |
|  | ) | of Cook County. |
| Plaintiff-Appellant, | ) |  |
|  | ) | No. 2018 M1 133801 |
| v. | ) |  |
|  | ) | The Honorable |
| BEDSTONE COMPANY and JOHN PENN, | ) | Jamie Guerra Dickler, |
|  | ) | Judge Presiding. |
| Defendants-Appellees. | ) |  |
|  | ) |  |

_____

PRESIDING JUSTICE REYES delivered the judgment of the court.
Justices Lampkin and Van Tine concurred in the judgment.

**ORDER**

¶ 1   *Held:*  The trial court's determination that defendants had made a valid tender to plaintiff such that plaintiff was foreclosed from seeking further attorney fees or costs is reversed, as defendants' attempted payment was not sufficient to constitute a tender.

¶ 2   The instant appeal arises from a landlord-tenant dispute between plaintiff Eric Frankel, the tenant, and defendants Bedstone Company and John Penn, the building owner and its property manager. After plaintiff filed a complaint alleging several violations of Chicago's Residential Landlord and Tenant Ordinance (RLTO) (Chicago Municipal Code § 5-12-010 *et seq.*

(amended Mar. 31, 2004)), defendants' counsel offered plaintiff a check for $4000, which plaintiff refused; counsel later offered another check, for approximately $7700, which plaintiff also refused. After lengthy litigation, plaintiff ultimately prevailed on two of his RLTO counts, while defendant prevailed on the remaining two. Plaintiff sought an award of attorney fees, as permitted by the RLTO. The trial court, however, awarded attorney fees only through the date that defendants' counsel had offered the $4000 check, finding that this check operated as a tender and that plaintiff was not entitled to any attorney fees after that date. Plaintiff now appeals, arguing that defendants' checks did not constitute a valid tender and that he was entitled to attorney fees for the entirety of the litigation. For the reasons that follow, we reverse the trial court's fee award and remand the matter for a new determination of appropriate attorney fees and costs.

¶ 3                                    BACKGROUND

¶ 4        Plaintiff rented an apartment in Chicago from defendants from 2015 through 2018. Beginning in 2017, plaintiff began complaining of problems with the apartment, including a collapsing ceiling and mold. Eventually, in August 2018, plaintiff contacted 311 and the city scheduled an inspection of the property. The same day that plaintiff contacted 311, defendants served plaintiff with a five-day notice terminating his tenancy, purportedly due to rent arrearages, which plaintiff disputed.

¶ 5        In October 2018, plaintiff filed a four-count complaint based on violations of the RLTO, in which plaintiff's total "Amount Claimed" was $7712.50, plus attorney fees and costs. Count I was for violation of section 5-12-080 of the RLTO (Chicago Municipal Code § 5-12-080 (amended July 28, 2010)) and alleged that defendants had failed to pay plaintiff interest on his security deposit. Count I requested an award of $2300—twice his security deposit—plus

attorney fees and costs. Counts II and III were for violations of section 5-12-110 of the RLTO (Chicago Municipal Code § 5-12-110 (amended Sept. 6, 2017)), with count II alleging failure to maintain the apartment based on the ceiling collapse and count III alleging failure to maintain the apartment based on mold. Count II requested an award of $2375 plus attorney fees and costs, and count III requested an award of $487.50 plus attorney fees and costs. Finally, count IV was for violation of section 5-12-150 of the RLTO (Chicago Municipal Code § 5-12-150 (amended Nov. 6, 1991)) and alleged that defendants had engaged in retaliatory conduct after plaintiff reported the problems with the apartment to city authorities. Count IV requested an award of $2500 plus attorney fees and costs.

¶ 6        As the issue on appeal revolves around the parties' communications after the commencement of litigation, we relate the facts concerning those communications in some detail.

¶ 7        The record on appeal demonstrates that the parties began communicating with respect to the merits of the litigation in late January 2019. It appears that plaintiff's counsel and defendants' counsel spoke on the telephone on January 23, 2019, and an e-mail from plaintiff's counsel to defendants' counsel sent the same day indicated that "I look forward to reviewing the settlement proposal you intend to send tonight or tomorrow. I am hopeful we can swiftly settle this matter." According to plaintiff's counsel, he and defendants' counsel had another telephone conversation on January 25, 2019, in which defendants' counsel "relayed an offer from [defendants] to settle the case for $4,000.00." Plaintiff's counsel indicated that he would speak with his client regarding the offer, and called defendants' counsel back shortly thereafter. Plaintiff's counsel "advised that [plaintiff] rejected the offer of $4,000, but would settle for

$9,500.00." Defendants' counsel responded " 'ok, we'll litigate.' " A January 25, 2019, e-mail from defendants' counsel "reiterate[d]" defendants' "offer," providing, in full:

"Hi Bill,

Thank you for speaking with me today.

To reiterate, our offer is as follows:

$1150 xx [*sic*] 2 = $2300

$100 for the summary

$1100 in fees, which is probably more than what you spent but I am assuming this number.

$500 in costs, which is probably more than you spent but I'm rounding up.

So I will send your office a check for $4000.

Your client countered and wanted $9000. I assume the deposit was already returned, since you did not sue for that.

Please be aware that we will object to your attorney fees after today. If you believe we have not sent enough to cover your fees and costs, please send us the billing and receipts.

Thank you."

Plaintiff's counsel immediately responded to the e-mail, indicating that "[t]he settlement offer is rejected. No need to send a check. Take whatever position you need to take in court." Defendants' counsel responded, "I will mail it regardless," and counsel dropped off a check in person shortly thereafter; the check is made out to plaintiff's counsel in the amount of $4000, with a memo line providing "Memo: Frankel vs. Bedstone."

¶ 8    On January 28, 2019, defendants' counsel sent plaintiff's counsel an e-mail, in which counsel indicated that, "since your client wishes to litigate, I will be filing a counter suit against him for breach of contract." Counsel further stated that "as noted, I have resolved your RLTO claims to the best of my ability given the limited information I have. Indeed I believe we overpaid you on costs, which I want to verify, so please send over receipts. Also please send your billing."

¶ 9    On February 13, 2019, plaintiff's counsel sent defendants' counsel a letter, which counsel claimed was written "in furtherance of the settlement discussions between our clients on this case" and "to clear up any confusion there may be on your or your clients' part concerning where we stand on settlement." After relating the facts concerning counsels' January 25 and January 28 communications, plaintiff's counsel stated that he was "left to interpret this behavior. It appears to be an attempt to make a re-offer [of] $4,000.00 in settlement. In response to said offer, my client is not willing to settle for $4,000.00. I will bring the check with me to today's hearing so I can hand it back to you." Along with the letter, plaintiff's counsel also included a payoff statement, which contained "an itemization of [plaintiff's] claims, which total $12,194.64 as of yesterday." Plaintiff's counsel also addressed defendants' counsel's request for documentation as to fees and costs:

"Your emails to me of 1/25/2019 also requested 'billing and receipts' regarding the attorney fee portion of the claim. At this stage of the case we are not going to disclose our itemized billing information, as it would present an untenable risk of disclosing privileged and/or attorney work product information. Furthermore, the entries could give insight into litigation strategy which I consider confidential since this case is still

pending. We are under no obligation to disclose the details of our billing and work to you at this stage.

Of course, if and when my client prevails on the merits, we expect to present a fully detailed fee petition to the Court. At that time you will have the opportunity to review and object to same as you see fit. I understand the Court will only award 'reasonable' attorney fees and am confident that our billing practices comply with this standard."

¶ 10    Plaintiff's counsel then reiterated plaintiff's willingness to settle:

"We do not have to reach 100% agreement on every penny of every claim in order to settle the case. My client is ready, willing and able to continue settlement discussions. However, your clients' outright declination of our prior offer, without any counter-proposal, leaves us at a standstill. My client will not negotiate against himself.

I believe settlement would be in your clients' best interest, and remain hopeful you can review this information and respond with a counteroffer to settle the matter. Please note that my client is uninterested in settlement offers that do not entail a basic written settlement agreement with a standard mutual release clause. Do not send checks with your offers. I would like to agree to a settlement figure and then negotiate a written agreement which clarifies how and when payment is due. I have settled many cases this way and I see no reason that this case cannot resolve in the same fashion, assuming we can reach a mutually agreeable figure."

¶ 11    In March 2019, defendants filed an answer to plaintiff's complaint, in which they admitted to the violation alleged in count I but alleged that "Plaintiff was paid $4,000 for said violation on January 25, 2018 by certified funds." Defendants denied the violations alleged in the other three counts. Three days after the filing of the answer, plaintiff's counsel sent a letter via e-

mail to defendants' counsel, indicating that he was "disturbed" by defendants' allegation that plaintiff was " 'paid' " for the violation alleged in count I. Counsel stated that "[t]his is false and you know it. Your client did not 'pay' $4,000 toward damages for the single violation of RLTO 5-12-080. Rather, your client made a unilateral offer to settle the entire case for $4,000.00. My client then rejected your offer and returned the check, a fact which goes unmentioned in your answer." The letter continued, in relevant part:

> "When returning the check and formally rejecting your offer, I wrote a letter to you about this just to ensure that there was no confusion on the point. I am attaching the letter here. I handed this letter to you personally last time we were in court, along with your check. The letter explains that based on your statements made in connection with the check, the tendering of the check was interpreted as an offer to settle the case for $4,000, and that my client was rejecting that offer because, *inter alia*, the amount was insufficient as full settlement and your client refused to sign a mutual general release. Rather than respond to my letter or seek to further clarify your actions, you stayed silent for a month. You then filed a pleading with the Court claiming that your client 'paid $4,000' toward one count of the complaint, which is just plain false.
>
> If your client wishes to make an *unconditional* payment toward its obligations, it may do so. But any such payment must be made clearly as an unconditional tender, and not accompanied by other statements in connection with the payment that the payment is a settlement offer." (Emphasis in original.)

The letter concluded by requesting that defendants withdraw the allegation that they " 'paid $4,000' " toward count I.

¶ 12    There does not appear to be any response to the March 2019 letter contained in the record on appeal, and plaintiff began issuing discovery. The next relevant correspondence between the parties appears to be in August 2019, when defendants' counsel sent an e-mail to plaintiff's counsel asking, "Can we talk settlement?" On the same day, plaintiff's counsel responded that he "would be happy to discuss settlement." Plaintiff's counsel continued:

> "Per Plaintiff's complaint, it looks like we are seeking, among other things:
>
> A. Count I (Security Deposit x2): $2,300.00
>
> B. Count II (Ceiling Collapse): $2,375.00
>
> C. Count III (Mold): $487.50
>
> D. Count IV (Retaliation): $2,550.
>
> These figures total to *$7,712.50*. In addition, Plaintiff is seeking attorneys' fees & costs to date, per the RLTO, since the filing of our complaint in October 2018.
>
> As I am sure you are aware, once a defendant litigates one of these RLTO cases for even a few months, the defendant has driven-up [*sic*] plaintiffs' attorneys' fees to a point where the defendant does not want to pay them. Still, if your client is willing to make a monetary offer, and willing to enter into a short, written settlement agreement containing, among other standard terms, mutual, general releases, I think it makes sense for us to talk." (Emphasis in original.)

¶ 13    The record does not contain any further correspondence on this issue but, in February 2020, defendants filed a counterclaim for breach of contract, alleging that plaintiff had failed to maintain the apartment in good condition. Plaintiff filed a motion to dismiss the counterclaim, contending that it was untimely, and the trial court ultimately granted the motion to dismiss in April 2021.

¶ 14     In November 2020, while the motion to dismiss the counterclaim was pending, plaintiff's counsel sent an e-mail to defendants' counsel, providing:

"I ran the numbers and come [*sic*] up with the following:

$7700 for penalties

$400 for costs

$38,100 for fees

$46,200 total.

Fees appear to be accruing at a rate of about $1,500 per month.

Make me an offer."

¶ 15     In response, defendants' counsel indicated that she would "discuss with [her] client." Two days later, defendants' counsel sent an e-mail in which she calculated plaintiff's damages as $4850, as counts III and IV of the complaint were not meritorious. Counsel noted that "I paid you $4000 in the beginning of this case and your firm returned it. Your firm has never sent me billing despite the fact that I have asked for it from day 1. Your billing calculus is not permitted by law." Counsel indicated that "[m]y client is willing to offer $6000 to include costs and fees from the time that I asked you for your billing."

¶ 16     Plaintiff's counsel responded in an e-mail that plaintiff "declines your offer." Counsel noted that "I appreciate that you are willing to concede the merits of counts I and II. I don't quite follow the logic concerning your offer to pay $4,000 early in the case and how that relates to the present status of settlement though. The offer did not satisfy the amount owed, so it doesn't affect the amount to be awarded." Defendants' counsel responded:

"Counselor, I cannot settle a case with your figures. Sorry, my concession of [count] 2 is for settlement only, think it's debatable.

9

As for settlement, $40,000 is not reasonable. I offered you $6000 and you did not counter.

I have done trials and not received that much money. Please name one time you ever got any fees of this magnitude. Please show me that Order.

I need a counter. Otherwise let's just set it for trial when we are in front of the judge in Jan."

¶ 17 There does not appear to be any further correspondence discussing resolution of the claims. As noted, however, on April 12, 2021, the trial court entered an order dismissing defendants' counterclaim. On April 21, 2021, defendants' counsel sent plaintiff's counsel an e-mail, which provided, in relevant part: "[A]gain, please send me your DETAILED billing. Not billing like the above please, I need itemized billing. My client will be sending you a certified check for all the damages and we will adjudicate your fees. I will file a Motion to Adjudicate. Please send me your billing."

¶ 18 On April 29, 2021, plaintiff filed a motion for summary judgment, contending that defendants had admitted liability with respect to count I and further contending that plaintiff was entitled to summary judgment on the remaining counts, as the facts established that defendants had violated the RLTO with respect to the ceiling collapse, mold issue, and retaliatory conduct.

¶ 19 On May 3, 2021, defendants issued a check in the amount of $7712.50, made payable to plaintiff's counsel. The memo line of the check contained the case number of the instant litigation.

¶ 20 On May 17, 2021, plaintiff's counsel sent an e-mail to defendants' counsel, providing: "In that your client tendered the full amount of the damages, I assume you are conceding liability

and wish to go forward on fees and costs only. See attached draft order for your review." Defendants' counsel responded the same day, stating, "[n]ot exactly, Tom. I have asked 1000x for your itemized attorney fees. You never give them to me. So I will file a Motion and ask." In response, plaintiff's counsel e-mailed: "Sorry, Carol, but I'm not quite following that. If you'd like me to send my itemized fees, just let me know." Defendants' counsel responded: "I need your itemized billing. I have asked for years. I need to analyze this case. Your counts 3 and 4 are loser counts. We both know that." Plaintiff's counsel stated: "Sorry Carol, but I don't see the utility of providing my itemized billing until liability and damages are determined. Any discussions up to that point are just settlement negotiations." Defendants' counsel responded: "I have asked you for your billing for YEARS. I will file a Motion." Plaintiff's counsel then e-mailed copies of receipts for costs, which he claimed totaled $494.79, and defendants' counsel responded that "I asked for billing on Frankel v. Penn."

¶ 21     The record indicates that the parties appeared before the trial court in early June 2021 and, on June 2, 2021, plaintiff's counsel sent an e-mail to defendants' counsel providing:

> "Thank you for clarifying in court that your client's tender of a check a few weeks ago was intended as payment in full for the damages set forth in the complaint. I've already sent everything concerning the plaintiff's costs and will send a fee summary tomorrow, and will [*sic*] forward to getting this case behind us."

Defendants' counsel responded: "You obviously missed the part where I said I would be challenging two counts. So it's not over. I will argue that your fees were over years ago."

¶ 22     On June 15, 2021, plaintiff filed a "motion for entry of judgment," indicating that defendants had recently provided him with a check for $7712.50, the amount claimed in the complaint. Plaintiff contended that, "[i]f the check [defendants] delivered is to pay in full the

11

amount claimed, after judgment is entered only the determination of fees and costs will be left to be resolved." If, however, the check was intended to be an offer to settle the lawsuit, then plaintiff contended that defendants' requests for a record of plaintiff's attorney fees was premature, as attorney fees were not relevant until liability was assessed. Plaintiff accordingly requested the entry of judgment in the amount of $7712.50 for the damages claimed, and a briefing schedule and hearing date for the issue of attorney fees and costs. Plaintiff's motion was denied on July 9, 2021.

¶ 23    On July 14, 2021, the trial court granted summary judgment with respect to count I of plaintiff's complaint, as defendants conceded the issue. With respect to the remaining counts, however, the trial court denied plaintiff's motion for summary judgment, finding a material issue of fact existed.[1]

¶ 24    The trial court conducted a bench trial on the remaining three counts of plaintiff's complaint on November 23, 2021. The trial court ultimately found in favor of plaintiff on count II, concerning the collapsed ceiling, finding that plaintiff was entitled to $1275[2] in damages plus attorney fees and costs. The trial court, however, found in favor of defendants on counts III and IV.

---

[1] We note that plaintiff appears to have been under the misconception that his motion for summary judgment was wholly denied, as he filed a second, largely identical, motion for summary judgment in October 2021, as well as filing a motion to continue trial which indicates that "the court denied in its entirety plaintiff's first motion for summary judgment on July 9, 2021." As noted, however, the July 9, 2021, order was a denial of plaintiff's motion for entry of judgment, while the July 14, 2021, order expressly grants summary judgment on count I.

[2] We note that, in its written order, the trial court references a judgment amount of both $1250 and $1275. Based on its analysis with respect to count II, it is apparent that the judgment amount is $1275 and that the reference to $1250 in the conclusion paragraph of the order is in error. Plaintiff, however, used both numbers at various points below. As the amount of damages is not at issue on appeal, we have no need to resolve any discrepancy.

¶ 25   In January 2022, plaintiff filed a petition for attorney fees and costs, requesting $75,992 in attorney fees and $494.79 in costs. On May 17, 2022, the trial court entered an order awarding plaintiff $3369 in attorney fees, for a total judgment amount of $6819 "when adding amounts in previous Orders dated July 14, 2021 (Count II [*sic*]) and December 10, 2021 (Count II), and attorney fees awarded herein."[3]

¶ 26   Plaintiff filed a motion to reconsider and, on August 22, 2022, the trial court denied the motion, finding "that the January 25, 2019 exchange between counsel coupled with delivery of a check for $4,000 constituted a valid tender, and that defendants made a later attempt to correct that tender in light of the supreme court's holding in *Joiner v. SVM Management*, [2020 IL 124671,] when they delivered a second check to plaintiff in March [*sic*], 2021." This appeal follows.

¶ 27                                              ANALYSIS

¶ 28   On appeal, plaintiff contends that the trial court erred in its calculation of attorney fees. Section 5-12-180 of the RLTO provides, in relevant part, that "the prevailing plaintiff in any action arising out of a landlord's or tenant's application of the rights or remedies made available in this ordinance shall be entitled to all court costs and reasonable attorney's fees." Chicago Municipal Code § 5-12-180 (added Nov. 6, 1991). In this case, plaintiff prevailed on counts I and II of his complaint, concerning the security deposit and ceiling collapse, respectively, and there is thus no dispute that he was entitled to an award of costs and attorney

---

[3] We note that the July 14, 2021, order did not specify a judgment amount as to count I, but the statutory damages award of twice the amount of the security deposit equals $2300. As the December 10, 2021, order awarded plaintiff $1275 (or $1250) on count II, the trial court's calculation of the total judgment amount (count I + count II + attorney fees of $3369) appears to be incorrect, as the total judgment would equal $6944 (or $6919), not $6819. In his motion to reconsider, plaintiff contends that the trial court reduced the award of damages in count II to $1150, but there is nothing in the record indicating that the court did so.

fees. See *Trutin v. Adam*, 2016 IL App (1st) 142853, ¶ 30 ("There is no question that, when a tenant sues for a violation of [the] RLTO and prevails, that tenant is entitled to reasonable attorney fees and all court costs related to that action."). In considering plaintiff's fee petition, however, the trial court awarded plaintiff no costs and $3369 in attorney fees, after finding that plaintiff was not entitled to any attorney fees or costs after January 25, 2019. Plaintiff contends that this finding was incorrect and that he was instead entitled to his reasonable attorney fees and costs for the entire litigation, including for the instant appeal.

¶ 29    Generally, it is within the discretion of the trier of fact to determine the reasonableness of the attorney fees requested, and a reviewing court will not make a *de novo* decision as to the appropriate award of such fees. *Raintree Health Care Center v. Illinois Human Rights Comm'n*, 173 Ill. 2d 469, 494 (1996). In this case, however, the trial court's fee award was based on its determination that defendants had made a valid tender in January 2019, which prevented the recovery of any future attorney fees or costs. See 735 ILCS 5/5-126 (West 2018) (a plaintiff may not recover any costs incurred after a tender). This presents questions of both fact and law, as it requires a trial court to rule on the legal effect of its factual findings, *i.e.*, the court must examine the facts of the case before determining whether those facts constitute a legally sufficient tender. See *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 154 (2005) (discussing proper standard of review where a trial court is required to rule on the legal effect of its factual findings). We accordingly follow our supreme court's guidance in *Corral* and apply a two-part analysis: (1) the trial court's underlying factual findings are reviewed deferentially, but (2) its ultimate conclusion of law is reviewed *de novo*. *Id.* This type of analysis comports with the typical review of questions concerning the sufficiency of tender, which apply *de novo* review when the facts are undisputed but defer to the trier of fact when

they are not. Compare, *e.g.*, *Brown & Kerr, Inc. v. American Stores Properties, Inc.*, 306 Ill. App. 3d 1023, 1032-33 (1999) (affirming grant of summary judgment where appellate court found facts were sufficient to constitute a valid tender), with *Shannon Court Condominium Ass'n v. Armada Express, Inc.*, 2020 IL App (1st) 192341, ¶ 26 (reversing grant of summary judgment where it was unclear whether the amount tendered was the balance due to the plaintiff homeowner's association).

¶ 30    Here, the issue on appeal is whether defendants made a tender which was legally sufficient to prevent the recovery of additional attorney fees and costs. The trial court's conclusion that it was did not rely on a disputed factual finding, but was a legal determination as to the validity of the tender. Our review, consequently, is *de novo*.

¶ 31    " 'Tender' is an unconditional offer of payment consisting of the actual production of a sum not less than the amount due on a particular obligation." (Internal quotation marks and citations omitted.) *Joiner*, 2020 IL 124671, ¶ 48. A tender is only effective if it is for the entire amount owed; a party, however, is not required to dispose of the entire case through its tender but may limit the tender to a particular claim or obligation. *Id.* ¶¶ 44, 49-50. A sufficient tender provides the plaintiff with the relief he seeks, as well as an admission of liability. *Id.* ¶¶ 45-46. When the plaintiff's cause of action includes an attorney fee award, however, it is sufficient for a tender to include payment of the amount claimed in the demand along with a request for the plaintiff's costs and fees, as the question of the reasonableness of the attorney fees is one for the courts, not for counsel, to decide. *Id.* ¶ 53.

¶ 32    In this case, the trial court found that "the January 25, 2019 exchange between counsel coupled with delivery of a check for $4,000 constituted a valid tender, and that defendants made a later attempt to correct that tender in light of the supreme court's holding in *Joiner v.*

*SVM Management*, [2020 IL 124671,] when they delivered a second check to plaintiff in March [*sic*], 2021." We thus must determine whether the January 25, 2019, communications, along with the delivery of the check, sufficed as a tender.

¶ 33     Based on the e-mails between the parties' attorneys, it is apparent that they had a phone conversation which preceded their written communications. In this phone conversation, as "reiterate[d]" in the January 25, 2019, e-mail from defendants' counsel, defendants "offer[ed]" $4000, which was broken down as follows:

> "$1150 xx [*sic*] 2 = $2300
>
> $100 for the summary
>
> $1100 in fees, which is probably more than what you spent but I am assuming this number.
>
> $500 in costs, which is probably more than you spent but I'm rounding up."

Plaintiff rejected this offer, seeking either $9000 (as reflected in the January 25, 2019, e-mail) or $9500 (as reflected in plaintiff's counsel's February 13, 2019, letter), which plaintiff's counsel relayed to defendants' counsel. The January 25, 2019, e-mail followed. Plaintiff's counsel immediately responded that "[t]he settlement offer is rejected," but defendants' counsel indicated that "I will mail [the check] regardless" and delivered the check to the office of plaintiff's counsel shortly thereafter.

¶ 34     We cannot agree with the trial court's conclusion that these communications, along with the check, constituted a valid tender. It is apparent that the January 25, 2019, e-mails were sent following initial settlement negotiations, and that defendants offered $4000 to compensate plaintiff for the entirety of his damages, costs, and attorney fees, an amount which plaintiff believed to be inadequate, and an amount which was less than that sought in the complaint.

This is confirmed by defendants' counsel's January 28, 2019, e-mail, which provided that "I have resolved your RLTO claims to the best of my ability given the limited information I have."

¶ 35    A tender "must be without conditions to which the creditor can have a valid objection or which will be prejudicial to his rights," and, accordingly, tender of an amount less than the creditor seeks is ineffective where the acceptance is conditioned on an admission that no greater amount is due, such as the requirement of a release. *MXL Industries, Inc. v. Mulder*, 252 Ill. App. 3d 18, 29-30 (1993); see also *Brown & Kerr, Inc.*, 306 Ill. App. 3d at 1032. Here, defendants offered $4000, an amount less than that sought by plaintiff, presumably in exchange for the dismissal of the litigation. This is a settlement offer, not a valid tender.

¶ 36    At best, defendants' $4000 payment could constitute a tender as to count I of the complaint, concerning plaintiff's security deposit, as suggested by defendants' answer to the complaint. This interpretation, however, is foreclosed by defendants' counsel's January 28, 2019, e-mail, which references resolution of plaintiff's "RLTO *claims*" (emphasis added), suggesting that the payment was intended to resolve all of plaintiff's claims, not simply his security deposit claim. Defendants' response to plaintiff's attorney fee petition similarly indicates that the $4000 was intended "[t]o settle the matter," including plaintiff's "purported claims of retaliation and mold." We also note that, on several occasions, plaintiff's counsel expressed a lack of understanding as to whether the payment was intended to be a tender or a settlement offer, but defendants' counsel does not appear to have taken that opportunity to clarify its position. There is therefore no basis for concluding that defendants made even a partial tender with respect to count I through their January 25, 2019, payment and communications.

¶ 37        We are similarly unpersuaded by defendants' contention, in their appellate brief, that the tender was sufficient since the ultimate judgment was for less than $4000. As noted, plaintiff ultimately prevailed on counts I and II of the complaint, which totaled approximately $3550 in damages. According to defendants, this demonstrates that the $4000 payment was sufficient to constitute a tender. This argument, however, has two flaws. First, plaintiff's judgment also included the ability to recover reasonable attorney fees and costs, not simply its damages award. Defendants' $4000 payment, however, expressly included counsel's estimate for such fees and costs. While the January 25, 2019, e-mail allowed for the possibility of actual fees and costs being higher than the estimate, defendants' "tender" was nevertheless separated into distinct calculations—for damages and for attorney fees and costs—and the "damages" portion of that calculation was less than plaintiff's judgment.

¶ 38        The more significant issue, however, is the fact that defendants' position relies entirely on hindsight. Defendants repeatedly assert that "[t]he maximum statutory damages for [counts I and II] was $3,550.12 ($2,300.12 for Count I and actual damages for Count II)." The amount of actual damages, however, was unknown until after trial; until then, the "maximum statutory damages" were what was alleged in the complaint, *i.e.*, $2300 for count I and $2375 for count II.[4] It is undisputed that defendants did not tender that amount in their January 25, 2019, payment. To the extent that defendants suggest that a court look to the ultimate damages award to determine whether a previously-offered payment was a valid tender, we find no merit in such a position.

---

[4] This, of course, also omits the fact that plaintiff's complaint alleged four counts, not merely the two on which he ultimately prevailed. Adding the four counts together, plaintiff's "maximum statutory damages" totaled $7712.50 plus attorney fees and costs.

¶ 39    Something is either a tender or it is not—the ultimate outcome of the case cannot determine the legal effect of the earlier payment. In defendants' view, if plaintiff was awarded a judgment of $3999, the $4000 payment would be considered a tender, but if the judgment was for $4001, it would not be. This cannot be the case, and defendants have cited no authority suggesting otherwise. It is true that section 5-126 provides that a party may "tender what he or she shall conceive [as] sufficient amends *** to pay the unliquidated damages or demands" and, "[i]f it appears that the sum tendered was sufficient amends *** to pay the damages," the plaintiff may not recover any costs incurred after the tender. 735 ILCS 5/5-126 (West 2018). This does not mean, however, that a defendant may pay any amount it chooses and the legal effect of that payment is left to be decided at the end of litigation. Our supreme court has made clear that the purpose of tender is to terminate the controversy, which is done when a defendant "provides the plaintiff *with the relief she seeks*, *** as well as an admission of liability." (Emphasis added.) *Joiner*, 2020 IL 124671, ¶ 45; see also *id.* ¶ 46 ("When a defendant admits liability and provides the plaintiff *with all relief requested*—as she does with a tender—no controversy exists." (Emphasis added.)); *id.* ¶ 53 ("In requesting that the plaintiff notify the tendering party of its costs and fees *along with actual payment of the maximum statutory damages*, a tendering party effectively tenders complete relief ***." (Emphasis added.)). Here, the relief plaintiff sought was set forth in his complaint, and it is payment of that amount which would constitute a tender, regardless of the trial court's ultimate damages calculation. Defendants' $4000 check was not sufficient to provide plaintiff with all relief requested and, accordingly, did not constitute a valid tender.

19

¶ 40    We similarly cannot find that defendants' later payment of $7712.50 was a tender.[5] Unlike the January 25, 2019, payment, defendants' May 3, 2021, payment of $7712.50 was for the entirety of the relief requested in plaintiff's complaint, apart from plaintiff's attorney fees and costs. After receiving this check, plaintiff's counsel e-mailed defendants' counsel, providing: "In that your client tendered the full amount of the damages, I assume you are conceding liability and wish to go forward on fees and costs only. See attached draft order for your review." Defendants' counsel responded, however, "[n]ot exactly, Tom. I have asked 1000x for your itemized attorney fees. You never give them to me. So I will file a Motion and ask." Plaintiff's counsel expressed his confusion, and defendants' counsel indicated that "I need your itemized billing. I have asked for years. I need to analyze this case. Your counts 3 and 4 are loser counts. We both know that."

¶ 41    The next time the parties were in court, plaintiff's counsel sent defendants' counsel an e-mail shortly thereafter which provided:

>   "Thank you for clarifying in court that your client's tender of a check a few weeks ago was intended as payment in full for the damages set forth in the complaint. I've already sent everything concerning the plaintiff's costs and will send a fee summary tomorrow, and will [*sic*] forward to getting this case behind us."

Defendants' counsel responded: "You obviously missed the part where I said I would be challenging two counts. So it's not over. I will argue that your fees were over years ago."

¶ 42    With respect to the $7712.50 payment, then, defendants tendered the damages sought by plaintiff in his complaint but (1) did not indicate that they would be willing to pay plaintiff's

---

[5] We note that the trial court did not find that this payment was a tender in itself but found that it was an attempt to "correct" the January 25, 2019, tender. We further note that, while plaintiff contends that this payment was not a tender, defendants chose not to address the argument in their brief.

reasonable attorney fees and costs and (2) did not admit liability as to at least two of the counts. See *Joiner*, 2020 IL 124671, ¶ 53 (where the plaintiff is entitled to attorney fees and costs, it is sufficient for the defendant to tender the amount claimed in the demand along with a request for the plaintiff's costs and fees). We therefore cannot find that the May 3, 2021, payment of $7712.50 constituted a valid tender.

¶ 43        As noted, the trial court's award of attorney fees and costs was based on its determination that defendants had made a valid tender on January 25, 2019, which was later "corrected" on May 3, 2021. As we have found that neither of these attempted payments constituted a valid tender, they did not operate to foreclose plaintiff from recovering further fees and costs. We therefore reverse the trial court's fee award and remand the matter for the trial court to determine an appropriate award of attorney fees and costs.

¶ 44                                    CONCLUSION

¶ 45        For the reasons set forth above, we find that the trial court erred in concluding that defendants' January 2019 payment constituted a valid tender. Consequently, plaintiff was not foreclosed from recovering reasonable attorney fees and costs after that date, and we reverse the trial court's award of attorney fees and costs and remand the matter for a new determination of an appropriate award.

¶ 46        Reversed and remanded.